## GREENBURY GAITHER vs. BENJAMIN BLOWERS.

In an action for an assault and battery, *threats* made by the plaintiff against the defendant *a month* before, and not shown *to have been communicated to the defendant* prior to, the battery complained of, are not admissible in evidence in *mitigation of damages.*

To make out a case in mitigation of damages, the *provocation* must be shown to have been so *recent* and *immediate* as to induce a presumption that the violence done was committed under the immediate influence of the feelings and passions excited by it.

In an action for an assault and battery, the plaintiff, with a view to *increase* his damages, may give in evidence that he was a *laboring man, and had a wife and children to support.*

Gaither *vs.* Blowers.

A declaration of the plaintiff, made shortly before the battery, that "he did not consider the defendant *always in his right mind,*" could not be evidence, except as showing *provocation* because of its irritating character, and, not having been communicated to the defendant, was properly rejected.

Where, under the plea of *son assault,* the defendant gives evidence of a first assault by the plaintiff, the *latter* may, under the general replication of "*de injuria,*" without a *new assignment,* or replying *specially,* give proof of, and recover for, an *excessive battery.*

APPEAL from the Circuit Court for Howard county.

This was an action of *trespass vi et armis,* brought by the appellee against the appellant, to recover damages for an *assault and battery.*

The declaration contains *three counts.* The *first* charges, that the defendant, on the 15th of August 1855, made an assault upon the plaintiff, and beat, bruised, wounded, and ill-treated him, and discharged at him a gun loaded with slugs and bullets, and thereby struck and wounded him in such a grievous manner that he became lame, sick, disabled and disordered for a long time, and was thereby rendered incapable of following and transacting his necessary affairs and business. The *second* charges, that on the day and year aforesaid, the defendant *again* assaulted the plaintiff, beat him, &c., and discharged another gun loaded with slugs and bullets, and thereby shot, struck, and wounded him, &c., as stated in the first count. The *third* charges, that on the day and year aforesaid, the defendant *again* assaulted and beat, bruised and wounded, and other wrongs then and there did to the plaintiff, &c.

The defendant pleaded, 1st, *non cul.,* and 2nd, *son assault demesne.* This plea of *son assault* is in the usual form, and alleges "that the said plaintiff, just before the time when, &c., to wit, on the day and year in the said declaration mentioned, at the county aforesaid, with force and arms, made an assault upon him, the said defendant, and would then and there have beaten, ill-treated, and greatly injured him, the said defendant, if he had not immediately defended himself against the said plaintiff; wherefore the said defendant did then and there defend himself against the said plaintiff, as he lawfully might, for the

cause aforesaid; and, in so doing, did necessarily and una-
voidably a little beat, wound and ill-treat the said plaintiff, do-
ing no unnecessary damage to the said plaintiff on the occa-
sion aforesaid. And the said defendant saith, that if any hurt
or damage then and there happened to the said plaintiff, the
same was occasioned by the said assault made by the said
plaintiff on him, the said defendant, and in the necessary de-
fence of himself, the said defendant, against the said plaintiff,
which are the supposed trespasses whereof the said plaintiff
hath above complained.'' The plaintiff took issue upon the
*first* plea, and to the second replied the general replication,
*de injuria sua propria*, &c., on which issue was joined.

1*st Exception.* The plaintiff proved by Burgess, a compe-
tent witness, the battery complained of, which consisted in
defendant's shooting him with a slug from a gun, wounding
him severely and dangerously through the shoulder and neck,
partially disabling him in the use of his left arm for life, and
otherwise injuring him. The history of the transaction, as
given by this witness, is, in substance, that on the 15th of
August 1855, Gaither was in an orchard near to Blowers'
house, with a gun, and witness and Blowers went to him, and
the latter ordered him to leave the premises, and keep off until
his (Blowers') time was up, to which Gaither replied, ''Damn
you; you have got no premises,'' and fired his gun at Blowers,
who declared he was shot, but Gaither said there was nothing
in it but powder; that Blowers again ordered him to leave,
and Gaither thereupon clubbed his gun and ran at Blowers,
and witness, thinking he was coming at him also, picked up a
stone, and told him he would knock him in the head if he
struck him, and Gaither then turned and went away; that
Blowers then proposed to witness to go up to the gap and tell
Gaither's son what his father was doing, and thereupon wit-
ness and Blowers followed Gaither up to the gap, the latter
some fifteen or sixteen rods ahead of them; that Gaither went
through the gap into the adjoining field, and Blowers did the
same, but as they went in, Blowers inclined one way, and
Gaither the other, and the former called to Gaither's son, who
was ploughing near by, to come and take his father home,

that he had shot him (Blowers;) that thereupon Gaither, who had stopped, and was standing in the field at the distance of thirty yards, by actual subsequent measurement, from Blowers, loaded his gun and fired at Blowers, wounding him as before stated, and immediately upon shooting him, Gaither said, "Take that, you son of a bitch," and then went home, leaving Blowers lying on the ground as he fell, and he was at once taken care of by witness and Gaither's son; that after the first shot, at the house, and Gaither left, neither witness nor Blowers spoke one word to Gaither before the second shot with the slug was fired; neither had either of them a stick, stone, or any other weapon in their hands, nor was there a dog with them.

The defendant's son, who was ploughing in the adjoining field, stated, that he heard the report of a gun in the direction of the plaintiff's house, and immediately afterwards heard a dog barking in that direction, and the voice of a man urging and setting a dog on some object, and very soon after that, heard the voices of men coming towards him, and quarrelling; that he could not see them, but recognized the voice of the plaintiff, saying, "You are a liar," and in a short time saw his father backing towards the gap, closely followed by the plaintiff and Burgess; that his father backed to the fence, but came to it a few pannels from the gap, and then went to and through the gap, into his own field, and was followed by the plaintiff and Burgess, the plaintiff being considerably in advance; that seeing witness, the plaintiff called to him, and said, "Your father has come over here and shot me, come and take him away;" that his father then stopped, and rested his gun on the ground, and witness hallooed to plaintiff to go back, but he turned towards his father, and witness then saw his father raising his gun, and he hallooed to him not to shoot, but the gun went off, and the plaintiff fell; witness was three hundred paces from his father when he hallooed to him not to shoot, but he does not know whether his father heard him, as he is a little hard of hearing; witness thinks that when the shot was fired, his father was ten or fifteen steps from the plaintiff, but he could not state the precise distance, not having

measured it; that he did not see a stick or any thing else in the hands of plaintiff or Burgess, at the time, nor did he see any dog. On *cross-examination*, this witness stated, that as soon as his father had shot, witness said to him he was sorry he had shot the plaintiff, when his father replied, as he went away, that he had shot the plaintiff because he had been dogged and stoned from his own place, by the plaintiff, like a sheep-killing dog.

It was also proved, that at the time the shooting took place, the plaintiff was a tenant of the defendant, having rented from him a house and lot, at a yearly renting, ending on the 20th of January, but that this renting did not include the field in which the shooting occurred, which belonged to defendant. The defendant had planted an apple orchard on part of the rented premises, without objection thereto on the part of the plaintiff, and that defendant frequently carried his gun, for the purpose of shooting or scaring crows, which were abundant in the neighborhood. It was also proved, that the defendant had, in June, previous to the shooting, caused a written notice to be served on the plaintiff, to quit the premises at the end of the year, and that the plaintiff had served a counter-notice on the defendant, warning him not to come upon the premises again till the year was out. Evidence was also given, on the part of the defendant, of a quarrel between the parties in June, and of threats made by the plaintiff against the defendant, about ten days previous to the shooting. The defendant then proposed to offer the testimony of Shields, which is fully stated in the opinion of this court, which the court below (BREWER, J.) rejected, and to this ruling the defendant excepted.

*2nd Exception.* The plaintiff, with a view to increasing his damages, offered to prove, by a competent witness, that at the time of the wounding aforesaid, the plaintiff was a laboring man, and had a wife and children to support. The defendant objected to this evidence as so offered, but the court admitted it as offered, and to this ruling the defendant excepted.

*3rd Exception.* The defendant then, to *impeach* the testimony of Burgess, proved by a competent witness, Howard, what Burgess *had said* to witness, a few days after the shoot-

ing, in reference thereto. (The history of the affair thus proved by Howard to have been given to him by Burgess, differs somewhat from that which Burgess had given upon the stand as a witness.) The defendant, having proved by the same witness certain threats made by the plaintiff against the defendant, and which had been communicated to the latter previous to the shooting, then offered to prove by said Howard, that shortly before the shooting and wounding of the plaintiff, he, the plaintiff, told the witness that he did not consider the defendant always in his right mind; but the court refused to allow said last offered evidence to be given for any purpose in this cause, and to this ruling the defendant excepted.

*4th Exception.* The defendant then asked the following instructions to the jury:

1st. If the jury find, from the evidence, that while the plaintiff was occupying, as tenant of the defendant, the house and lot named in the evidence, under an annual renting ending on the 20th of January in each year, the defendant was permitted by the plaintiff to plant an orchard on said lot; and if they further find, that afterwards, in June 1855, the defendant caused the written notice to be served on the plaintiff, as stated in the evidence; and if they further find, that on the 15th of August 1855, the defendant was present in said orchard trimming the trees thereon, and doing no harm, and that the plaintiff and said Burgess advanced on him and treated him in the manner stated by the witness, Howard, to have been related to him by said Burgess; and if they further find, from the whole evidence, that the defendant was then and there offensively and insultingly ordered off said premises by the plaintiff, and was then and there set upon by a dog, urged on by the plaintiff, and driven off said lot by the threats of the plaintiff and said Burgess, acting together in concert, or by the threats of the plaintiff alone, to commit an assault upon the defendant, and that Burgess did then and there take up a stone, he being in striking distance, and threatened to knock out the brains of the defendant; and if they further find, that defendant repelled such threatened assault and violence, by then and there firing his gun, loaded only with powder, at the

plaintiff, without injuring him, and, thereupon, attempted to retreat from said premises, but was violently pursued and driven therefrom, by the plaintiff, with abusive language and threats of personal violence, and that said pursuit was so close and fierce that the defendant was compelled, for his own safety, to retreat backwards, so as to face his pursuer, and be prepared for his meditated assault; and if they further find, that on reaching his own field, named in the evidence, the defendant stopped and loaded his gun, and that the plaintiff continued his hostile pursuit of the defendant into said field; and if they further find, that the defendant, then and there being on his own land, and unwilling to retreat further, apprehended personal violence and injury from the threatened assault of the plaintiff; and if they further find, that said apprehension in the mind of the defendant arose from the pursuit and conduct of the plaintiff aforesaid, as well as from the previous threats made by the plaintiff, that he would kill the defendant, or cause him to be killed, and that said threats had been communicated previously to the defendant; and if they further find, that the defendant, acting under said apprehension, and in the belief that the plaintiff was again advancing on him for purposes of violence, did then and there quickly load his gun, and, for the purpose of self-defence, fired the same at the person of the plaintiff, severely and dangerously wounding him in the manner stated in the evidence, and that said wounding is the injury complained of in the declaration, then the verdict of the jury, on the issues joined under the *second plea* of the defendant, must be for the defendant, notwithstanding the jury may believe, from the evidence, that the battery and wounding of the plaintiff, as aforesaid, was excessive, and more violent and dangerous than was necessary and proper for the self-defence of the defendant.

2nd. If the jury find, from the evidence aforesaid, that the battery and wounding of the plaintiff, by the defendant, complained of in the declaration, was occasioned by and in consequence of a previous assault then just committed by the plaintiff on the defendant, and while the plaintiff was still pursuing the defendant, for the purpose of self-defence, then the defend-

Gaither *vs.* Blowers.

ant is entitled to a verdict under the issue joined on his *second plea,* notwithstanding the jury may find that said battery and wounding was excessive, and went beyond the necessary and proper defence of the defendant, against a mediated second assault by the plaintiff, and his continuing pursuit of the defendant, for the purpose of such second assault.

3rd. The court instructs the jury, that it is not competent for them, in deciding the issue joined under the *second plea* of the defendant, to find the defendant guilty of having used more force and violence than was necessary or proper; *provided* the jury shall find, that the defendant committed said trespass complained of in defending himself from an assault then and there being committed by the plaintiff, or which the defendant had good reason to believe, from the conduct and previous threats of the plaintiff, was about to be immediately committed by the plaintiff on the defendant.

4th. The court instructs the jury, that it is not competent for them, in deciding the issue joined on the *second plea* of the defendant, to find the defendant guilty of having used more force and violence than was necessary or proper; *provided* the jury find that the defendant committed the trespass complained of, in defending himself from an assault then and there being committed by the plaintiff, or which the defendant had good reason to believe, from the conduct of the plaintiff at the time, and immediately preceding the time of said trespass, as well as from his previous threats, the plaintiff was about to commit on the defendant.

The court rejected each and all of these prayers, and to this ruling the defendant excepted. The jury gave a verdict for the plaintiff for $1750 damages, and from the judgment rendered thereon, the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*William H. G. Dorsey* and *Robert J. Brent* for the appellant, argued:

1st. That the evidence of Shields, as proposed to be given

in the *first exception* was admissible. The court below re-jected it absolutely, and the offer being a *general* one, this ruling is erroneous, if the evidence was admissible for *any purpose*. And it is insisted, that it was admissible, 1st, to *explain* .the conduct of the plaintiff; to show what his *purpose* and *intentions* towards the defendant were, on the occasion of the quarrel. 2nd. To *mitigate the damages*, 2 *Greenlf. on Ev.*, .*sec.* 266, and .3rd. It was admissible to *corroborate* the testi-.mony of· Howard, who proved nearly the *same threats*, and ·that· they were communicated to the defendant previously to the shooting.

2nd. That injury to the plaintiff's *wife* and *children*, was not the necessary result of the defendant's act, and should therefore have been *declared on specially*, before evidence upon the subject could have been properly admitted, 2 *Greenlf. on Ev., secs.* 266, 267, 268. The defendant might have shown, ~ if the declaration had given notice that the plaintiff designed to go for such damages, that the wife and children had *separate means* of support, and the introduction of such evidence, therefore, operated a *surprise* upon the defendant. The law on this subject is, that those facts and circumstances, *only* can be given in evidence in aggravation of damages, which belong to the *act* complained of, which are the *legal* and *natural* con-sequences therefrom, (2 *Greenlf. on Ev., sec.* 89,) and there is no well considered case in which such latitude of testimony as this has been allowed.

3rd. That the evidence of Howard, offered in the *third* ex-ception, was admissible to explain the defendant's conduct, and *mitigate* the damages. The fact that the plaintiff him-self considered the defendant as *not always in his right mind*, would serve to show, that when he committed the act com-plained of, he was not actuated by *malice*, and if the injury was·unavoidable, and the conduct of the defendant free from blame, he is not liable.· 2 *Greenlf. on Ev., sec.* 85. The *quo animo* is material, as without an unlawful intention there is no assault, and any evidence of .*intention* is admissible. 2 *Greenlf. on Ev., sec.* 94; 1 *Hawks*, 420, ·*Stout vs. Wren.*

4th. That to enable the plaintiff to recover on the second

issue, for the excessive assault and wounding he should have replied specially. Where the defendant pleads *son assault demesne*, and the battery is outrageous, or more than was necessary for *self defence* that *matter should be so replied*, and it cannot be given in evidence under the general replication of *de injuria*. 1 *Chitty's Pl.*, 592, 593. 2 *Greenlf. on Ev.*, sec. 95. 7 *Moore*, 23, in 17 *Eng. C. L. Rep.*, 69, *Dale vs. Wood.* 1 *Bing. N. C.*, 380, in 27 *Eng. C. L. Rep.*, 425, *Price vs. Peek.* 2 *Camp.*, 175, *Monprivatt vs. Smith. Ibid.*, 629, *Warrall vs. Clare. Carthew*, 280, *King & Wife, vs. Phippard*, and same case in *Skinner*, 387. There is no decision of the Court of Appeals, directly on this point, yet they have said in *Yingling vs. Hoppe*, 9 *Gill*, 314, which was an action for a false imprisonment, that "matters of aggravation need not be answered. In a case like this, the plaintiff must rely *upon them* in his *replication*, or there must be a *new assignment*. See also 1 *H. & J.*, 483, *Gibson vs. Fleming*."

*Oliver Miller* and *Joseph M. Palmer* for the appellee, argued:

1st. No offer having been made to follow up the testimony of *Shields*, showing that the threats had been communicated to the defendant before the shooting, the court was right in rejecting it, because without such proof the testimony was *irrelevant*. 6 *Md. Rep.*, 525, *Warner vs. Hardy*. But in any view this testimony was inadmissible, even if the threats had been communicated to him, because they were not part of the *res gestæ*, and were *too remote* to *mitigate* the *damages* or *provoke* the shooting. After so long a time had elapsed they could not have afforded any provocation for the acts of the defendant. No acts or declarations of the plaintiff, nor any antecedent facts which are not fairly to be considered as part of one and the same transaction, though they may have been ever so irritating or provoking, can be given in evidence in mitigation of damages. *Sedgwick on Damages*, 563. 2 *Greenlf. on Ev.*, sec. 267. *Buller's Nisi Prius*, 17. 1 *Saund. on Pl. & Ev.*, 106, 127. 1 *Mass.*, 12, *Avery vs.*

69　7 ll.

*Ray.* 19 *Johns.*, 319, *Lee vs. Woolsey.* 1 *Bald. C. C. Rep.*, 58. 13 *Wend.*, 658, *Ellsworth vs. Thompson.*

2nd. The evidence offered in the *second exception* was properly admitted. This is one of those actions in which the jury are allowed to give *exemplary damages.* As to the extent of the damages the general rule is, that the jury are not confined to the mere corporal injury, which the plaintiff has sustained, but they are at liberty to consider the malice of the defendant, the insulting character of his conduct, the *mental agony* also which the plaintiff suffers, the *rank in life* and *situation* of the parties, and all the circumstances of the outrage. 2 *Greenlf. on Ev.*, secs. 89, 267. 1 *Stephen's Nisi Prius*, 224. Does not this case come within this general rule? What could more effectually disclose the *rank in life* and the *situation* of the plaintiff, or more forcibly place before the jury the *mental agony* which he must have suffered, than showing that he was a *laboring man* and had a *wife and children to support*, whose *daily bread* was dependant upon his exertions, and for the want of which he might see them *starving* around him, whilst he was rendered unable to work, in consequence of the cruel beating inflicted upon him by the defendant? There is no case in our own courts, in which the question has been decided, but in numerous cases in the courts of other States, just such evidence has been admitted. 3 *Scammon*, 372, *Grable vs. Margrave.* 16 *Illinois*, 317, *Cochran vs. Ammon & Wife.* 5 *Indiana*, 322. 2 *Gilman*, 432, *McNamara vs. King.* 1 *Swan's (Tenn. Rep.,)* 57, *Hodges vs. Nance.* 4 *Pick.*, 216, *Reed vs. Davis.* 1 *Jones (N. C.) Law Rep.*, 98, *Pendleton vs. Davis.* 13 *Iredell*, 28, *McAulay vs. Birkhead.* 23 *Wend.*, 425, *Lincoln vs. Saratoga Rail Road Co.* But *that part* of the evidence which showed that the plaintiff was a *"laboring man,"* was clearly admissible, being directly within the *issue*, because the declaration alleges, that in consequence of the battery he was prevented from doing and transacting his lawful affairs *and business,"* and the objection being to the *whole in mass*, the court was right in overruling the objection, if *any part* of the evidence was admissible. *Carroll's Lessee vs. The Granite Manufacturing Co., Ante*, 399.

3rd. The evidence which the court rejected in the *third exception*, was clearly inadmissible. The fact, that the plaintiff told the witness Howard, that he did not consider the defendant as *always in his right mind*, could neither sustain the plea of *son assault* nor *mitigate* the *damages* by showing *provocation*, there being nothing to show that this declaration was ever communicated to the defendant, and has no more to do with the case than any other declaration the plaintiff may have made, about the defendant, in regard to his habits, wealth, property or politics. It is in no conceivable manner *relevant to the issues*.

4th. The prayers offered on the part of the defendant, are all defective, because there is *no evidence* to sustain them, but on the contrary, the evidence shows a state of case directly the *reverse* of that which the jury are asked to find, and should have been properly rejected for this reason alone. 8 *Md. Rep.*, 118, *Edelin vs. Saunders*. There is not one *iota* of evidence to sustain the plea of *son assault*, which the prayers were intended to reach, nor is there one tittle of evidence, to prove that the defendant committed the outrageous assault and battery upon the plaintiff in *self defence*, or to prevent a personal injury about to be done to himself. Besides, there are *special* objections to each of these prayers. The *first* uses the evidence of *Howard's statement, of what Burgess told him,* as the correct history of the shooting, whereas this testimony of Howard was *offered*, and was only *admissible* for the purpose of *impeaching* Burgess, and could only be used for that purpose. "When testimony is admitted for a *particular purpose*, it does not follow, that the party introducing it may then use it for any object he thinks proper, and if any such attempt is made the court will prevent it upon the application of the opposite party, where the use attempted is an improper one." 3 *Md. Rep.*, 188, *Emory & Gault vs. Owings*. An improper use of this evidence, was clearly attempted to be made in this prayer, and the proper application was made to the court to prevent it, by our *objection* to the *granting* of the prayer. To this and the other prayers, there are also other special objections which need not be urged, for—

5th. These prayers are all defective, because they all assume an erroneous *proposition of law*, viz., that under the plea of *"son assault"* and the replication *"de injuria,"* the plaintiff cannot recover for, or give evidence of, the *excessive battery and wounding*. This has been considered as a vexed question in England, and the decisions there both ancient and modern are somewhat conflicting. Yet the *weight* of English authority is decidedly in favor of the position, that such evidence *is admissible* under the general replication *de injuria*. In *Crogate's Case*, 8 *Coke*, 66, it was *resolved*, that *"*the general plea *de injuria sua propria*, &c., is properly, when the defendant's plea doth consist *merely upon matter of excuse*, and of no matter of interest whatsoever: *et dicitur de injuria sua propria*, &c., because the injury properly in this sense, is to the *person* or to the reputation, as *battery* or *imprisonment* to the *person*, or scandal to the reputation; there, if the defendant *excuse* himself upon *his own assault*, or upon hue and cry levied, there properly, *de injuria sua propria* generally is a *good plea*, for there the defendant's plea consists only upon *matter of excuse.*" See also 1 *Chitty's Pl.*, 592, 605, 606. 1 *Saund. Rep.*, 244, *(c.) note. Willes' Rep.*, 54, *Cooper vs. Monke.* 2 *Saund. Rep.*, 295, *White vs. Stubbs, (note* 1.) 1 *Bos. & Pull.*, 76, *Jones vs. Kitchin*. When matter of record is part of the issue, or when the defendant *justifies* under some *authority*, or claims some *interest* or *title* in *land*, or pleads a release, &c., in *denial* and not in *excuse*, in such cases the plaintiff must meet the plea by a new assignment or replying specially, but in all other cases the general replication *de injuria*, is sufficient. 1 *Smith's Lead. Cases, (Hare & Wallace's Notes,)* 177. The general replication then is in this case clearly *sufficient*, the plea of *son assault* being a mere *matter of excuse*. *Chitty* in the *first* volume of his *Pleadings*, 627, (*7th London Edition,*) says: *"If son assault demesne* has been pleaded, and the evidence will establish, that the defendant's battery of the plaintiff was *excessive*, and more than was necessary for self defence, it seems that, according to the latest decisions, the plaintiff may under a *de injuria*, and without a special replication or new assignment, give in evidence the ex-

Gaither *vs.* Blowers.

cess." The same rule is stated in 1 *Stephen's Nisi Prius*, 216. Such also seems to have been the decisions in the earlier English cases. *Yelv*, 157, *Taylor vs. Markham*. *Keble*, 884, *Dauce vs. Luce*. The leading case against this doctrine is, that of *Dale vs. Wood*, (cited on the other side,) a decision of the *Common Pleas*, which is in direct conflict with that of the *Kings Bench*, in *Phillips vs. Howgate*, 5 *Barn. & Ald.*, 220, where it was held, that it was not necessary to *new assign* the *battery*, and proof of the excessive beating was permitted to go to the jury under the general replication *de injuria*. See also 1 *Crompton & Jervis*, 292, *Lamb vs. Burnett*. 1 *Har. & Wol.*, 15, *Reece vs. Taylor*. The *reason* of the law is also in favor of the admissibility of such evidence under the general replication. The plea of *son assault demesne*, is not simply that the plaintiff *committed the first assault*, but it also alleges, and *must* allege, (or otherwise it is *demurrable*,) that, in repelling this assault, the defendant did *"no unnecessary damage to the plaintiff,"* and that he acted in the *"necessary defence of himself."* This plea therefore throws the *onus* upon the *defendant*, not only of proving the *first* assault, but also that the assault was *proportionable* to the *battery*. 1 *Saund. Pl. & Ev.*, 106. 3 *Starkie's Ev.*, 1134. 2 *Greenlf. on Ev.*, sec. 95. In *Cockcroft vs. Smith*, 2 *Salk.*, 642, *Chief Justice Holt* says: "That for every assault he did not think it reasonable a man should be banged with a cudgel; that the *meaning of the plea* was, that *he struck in his own defence.*" The *onus* then being on the defendant under *this plea*, of proving that the assault was *proportionable* to the *battery*, why should not the plaintiff under the *general replication*, which puts in *issue* the *whole plea*, be allowed to prove the *excess?* Again, the plaintiff cannot *both* traverse a plea of *son assault* and *new assign*, (10 *East.*, 73, *Chearley vs. Barnes*,) and if he new assigns, he *confesses* that he made the *first assault*, and plaintiffs would therefore, if the law as contended for by the appellant is correct, be compelled in every case, where it was *doubtful* whether the proof would show a *first assault*, to *admit* one part of the defendant's plea, in order to be at liberty to controvert the rest. But the authorities in

this country speak but *one voice* on this subject, and have placed the law upon a sound and correct basis. Without a *single exception*, the American decisions all say, that such evidence is admissible under the general replication of *de injuria.* 2 *Greenlf. on Ev.*, secs. 95, 96.   15 *Mass.*, 347, *Hannen vs. Edes.*   11 *Pick.*, 379, *Sampson vs. Henry.*   2 *New Hamp.*, 539, *Curtis vs. Carson.*   2 *Vermont*, 470, *Elliot vs. Kilburn.*   24 *Vermont*, 218, *Bartlett vs. Churchill.*   5 *Johns.*, 112, *Jackson vs. Smith.*   20 *Johns.*, 427, *Gates vs. Lounsbury.*   25 *Wend.*, 371, *Bennett vs. Appleton.*   4 *Denio*, 448, *Scribner vs. Beach.*   8 *Barr.*, 454, *Frederick vs. Gilbert.* 4 *Blackford*, 518, *Fisher vs. Bridges.*   6 *Blackford*, 185, *Reese vs. Bolton.*   11 *Illinois*, 17, *Ayres vs. Kelley.*

6th.   But there is another *fatal* objection to all these prayers, even assuming that the position contended for by the appellant is correct.   The *declaration* contains *three separate* counts, charging *separate and distinct* assaults, and there is but *one plea* of *son assault demesne.*   Where there have been several assaults, "a new assignment is only necessary where there is but *one* count in the declaration; for if there be as many counts as there were assaults, and some of them *cannot be justified*, the plaintiff may prove those *without* a new assignment, because as to them the defendant will be obliged to plead not guilty."   *Buller's Nisi Prius*, 17.   The use of inserting several counts, is to avoid the prolixity of making a new assignment.   1 *Saund. Rep.*, 299, *(a.) notes.*   This plea, therefore, not specifying to *which count* of the declaration it applies, and the proof showing that there were *two separate* assaults, we could give evidence, and recover for that which was not justified by the plea.   The refusal therefore of these prayers worked the defendant no injury.

The following opinions were delivered in the case.

Le Grand, C. J.—This is an action of assault and battery, brought by the appellee against the appellant.   The pleas were *"not guilty* and *"son assault demesne;"* the replication to the second plea was *"de injuria et cetera."*

The plaintiff gave evidence of the battery complained of,

which was, the shooting of him by the defendant, in the shoulder and neck, and partially disabling him in the use of the left arm for life, and otherwise injuring him. Whereupon the defendant offered to prove by a Mr. Shields, that in June 1855, the plaintiff told him he had taken a notice to the defendant's house, warning him not to come to his house again, and had told his son to tell his father, that if he ever come again on his premises, he would put him where all his negro money could not bail him. And further offered to prove by the same witness, that at the same time the plaintiff declared he would as soon kill the defendant as a rattlesnake, and he was a grand rascal, and he, the plaintiff, had told his negro woman, if she would shoot the defendant that he would hold her harmless, but the witness stated, that he had not communicated this conversation to the defendant before the plaintiff was shot. On the defendant's counsel being questioned by the court, whether they meant to follow up the offered evidence with proof, to show that the conversation of the plaintiff, as detailed by Shields, had been communicated by him to the defendant before the shooting of the plaintiff, the counsel replied, they had no such proof, whereupon the court refused the offered testimony, and this refusal constitutes the appellants first exception. Under this state of circumstances, the court below was clearly right in rejecting the evidence. Possibly it might have been evidence in the cause, *in mitigation of damages*, had it been shown by other testimony, that this language had been communicated to the defendant. In no event could it have been used to prove a defence. The declarations were made in June 1855, and the battery complained of was in August of the same year. To make out a case in mitigation of damages, the provocation should be shown to have been immediate. *Avery vs. Ray*, 1 *Mass.*, 12. In *Lee vs. Woolsey*, 19 *Johnson*, 319, it was held, that in an action of assault and battery, the defendant cannot give in evidence, in mitigation of damages, acts or declarations of the plaintiff at a different time, or any antecedent facts which are not fairly to be considered as a part of one and the same transaction, though they may have been ever so irritating and provoking: That the

provocation, to entitle it to be given in evidence, in mitigation of damages, must be so recent and immediate, as to induce a presumption, that the violence done, was committed under immediate influence of the feelings and passions excited by it. When, therefore, we say, that had the proposed evidence been followed up by proof that it had been communicated to the defendant, that possibly it might have been considered in mitigation of damages, we mean to be understood as merely asserting, that if the communication had been made at a time so near to that of the battery, as to have allowed the inference, that the conduct of the defendant was influenced by the irritation of feeling produced by it, then it would be proper for the jury to consider it in the assessment of damages. The law mercifully pays this tribute to the weakness and infirmities of human nature, which subject it to uncontrolable influences when under great and maddening excitement superinduced by insult and threats. But it wholly discountenances that cruel disposition, which for a long time broods over hastily and unguardedly spoken words, and seeks, when opportunity offers, to make them an excuse for brutal behavior. With such a temper it has no sympathy. It charitably deals with sudden gusts of feeling, but rigorously with the malignant and cruel. This is its ethics.

The second exception of the appellant, grows out of the court's allowing the plaintiff to give evidence, with a view of increasing his damages, that he was a laboring man, and had a wife and children to support.

The general rule is, that it is not necessary to state specially any matters which are the *legal* and *natural* consequences of the battery, nor are the jury confined to the mere corporal injury which the plaintiff has sustained; but they are at liberty to consider the malice of the defendant, the insulting character of his conduct, the rank in life of the several parties, and all the circumstances of the outrage, and thereupon to award such exemplary damages as the circumstances may, in their judgment require. 2 *Greenlf. on Ev.*, *sec.* 89. In *McNamara vs. King*, 2 *Gilman*, 436, the court say, that "in actions of this kind, the condition in life, and circumstances of the par-

ties, are peculiarly the proper subjects for the consideration of the jury, in estimating the damages; their pecuniary circumstances may be inquired into. It may readily be supposed that the consequences of a severe personal injury would be more disastrous to a person destitute of pecuniary resources, and dependent wholly on his manual exertions for the support of himself and family, than to an individual differently situated in life. The effect of the injury might be to deprive him and his family of the comforts and necessaries of life. It is proper that the jury should be influenced by the pecuniary resources of the defendant. The more affluent, the more able he is to remunerate the party he has wantonly injured. In this class of cases, the jury may give exemplary damages, not only to compensate the plaintiff, but to punish the defendant. The standard of damages is not a fixed one, applicable to all cases, but is to be regulated by the circumstances of each particular case." This is good sense, and is sustained by the decisions in most of the States. An injury done to a person not dependent on manual labor for the support of himself and family, is in nowise as great as one to a person so situated. We are of opinion the court properly overruled the objection.

After testimony given by a witness named Howard, for the purpose of discrediting the witness, Burgess, and also proving certain conversations, the defendant offered to prove, by the witness, Howard, "that shortly before the shooting and wounding of the plaintiff, he, the plaintiff, told the witness that he did not consider the defendant always in his right mind;" but the court refused to allow said last offered evidence to be given for any purpose in the cause, and this refusal is appellant's third exception. It does not appear this judgment of the defendant, by the plaintiff, was ever made known to him, nor does it appear there was any mental imbecility, or liability to mental aberration, of the defendant, nor was any proof proposed to be given to show that, at the time of the perpetration of the wrong, the defendant was not in the full possession of his mind, save as may be gathered from the facts in the cause, he was governed by wicked and bad feelings toward the plaintiff. Without intimating that if either or all these circum-

stances had been proven, or had been offered to be proven, that then the conversation had with the witness, Howard, would be admissible, yet, in their absence, we are wholly unable to perceive on what theory it was expected it should be allowed to be given in evidence. This is a civil action for damages alleged to have been sustained by the plaintiff, because of the tortious act of the defendant, and not a criminal proceeding, where an inability to distinguish between right and wrong, would avail to the advantage of the defendant. The idle declaration of the plaintiff, of his opinion, that the defendant was not always in his right mind, could not, in any event, be evidence, except as showing provocation, because of its irritating character. But it does not appear this language was ever communicated to the defendant, and, for the reasons which we have given in regard to the first exception, was rightfully rejected.

On the whole testimony, the defendant submitted to the court four prayers, (numbered, in the record, 1, 3, 4, 5,) all of which, in our judgment, were properly rejected. Each, apart from other considerations, contained the same vicious principle; that is to say, they denied the right of the plaintiff to recover on the second issue for the excessive assault and wounding, he not having replied specially to the plea of *son assault demesne.*

The view of the counsel for the defendant, as taken in these prayers, on examination, will be found to rest principally on the case of *King & Wife vs. Phippard,* in *Carthew,* 280, and in *Skinner,* 387. Most, if not all, of the elementary writers, refer to this case for the support of the doctrine contended for by the defendant. That case seems to have been this: the plaintiff declared for an assault and battery committed on his wife, to which the defendant pleaded *son assault demesne.* The plaintiff replied, not generally, but by confessing the assault, and avoiding it; that is, it was confessed she made the first assault, by gently forcing from her house the defendant, who had entered it and there misbehaved; the defendant's misbehavior was the justification. To this replication the defendant demurred, but the court held it to be good, observing

that the plaintiff could not have given this *new* matter in evidence under the general replication *de injuria*, &c. This seems reasonable and proper, and conformable to the rules of pleading. Until this special replication, the plaintiff had not, on the record, admitted his wife had made any assault, and if he wished to admit and justify it, it was incumbent on him to do so in his pleadings before the introduction of testimony in relation to it. The plea of *son assault demesne*, in substance, asserts that the plaintiff made the first assault, and that in resisting it, the defendant used no excessive violence. The plea admits the assault charged against the defendant, but justifies it by the previous assault of the plaintiff, and the use of only such violence as was necessary to repel it. A denial of this, imposes on the defendant the proof of the first assault, and the employment, on his part, of no more than the proper force to resist it. It is difficult to perceive how the whole question could be presented more distinctly than by a flat denial of the allegations of the plea. To compel a plaintiff, who had made no assault on the defendant, to confess that he had done so, and then to justify what never did occur, seems to be repugnant to all our ideas of right reasoning. Widely different is the case where such an assault has been made by the plaintiff. In such a case, if the plaintiff wishes to *justify* such an assault by evidence to be given at the trial, then he should specially aver it, and the circumstances constituting its justification. We understand the case of *Dale vs. Wood*, 17 *Eng. C. L. Rep.*, 69, as asserting the same doctrine as the case of *King vs. Phippard*, in *Carthew*, 280. The Court of Common Pleas do nothing more than declare, that where a plaintiff can *justify* his assault on the defendant, he must plead specially, and that he will not be permitted to justify by evidence at the trial, under the general replication *de injuria*. In the case of *Dale vs. Wood*, there was *proof that the plaintiff assaulted the defendant*, by dismounting from his horse, and holding up his stick at the defendant, when the latter struck him. What the court disallowed was a *justification* by the plaintiff, at the trial, under the general replication. And so here, had it been proven that the plaintiff had first assaulted the defendant, under the au-

thority of the cases referred to, he would not have been permitted to justify it by evidence at the trial. But such is not the case; there is a total want of proof of any assault having been made by the plaintiff, and the defendant failing to prove it, his defence was confined to his own act, that complained of.

These views will be found to be fully sustained by a very able opinion of the Supreme Court of Vermont, in the case of *Elliot vs. Kilburn, 2 Vermont,* 470, in which there is a clear review of most of the authorities. An examination of that case will fully establish the rationality of the view we have taken of the prayers in this case, supported, as it is, by the principles of pleading, and the judgments of those most reputed for proficiency therein. And, we may add, that the doctrine is also fully sustained by *Crogate's case,* 8 *Coke,* 66, where it was resolved as follows: "The general plea, *de injuria sua propria,* &c., is, properly, when the defendant's plea doth consist merely upon matter of excuse, and of no matter of interest whatsoever; *et dicitur de injuria sua propria,* &c., because the injury properly, in this sense, is to the person, or to the reputation, as battery or imprisonment to the person, or scandal to the reputation; there, if the defendant excuse himself upon his own assault, or upon hue and cry levied, there properly *de injuria sua propria* generally is a good plea, for there the defendant's plea consists only upon matter of excuse." In this case, the defendant's plea *"consists only upon matters of excuse,"* and, therefore, the general replication is good.

ECCLESTON and BARTOL, J.—We agree with the Chief Justice in the propriety of affirming all the decisions of the court below, which have been excepted to; and we concur in the views which he has expressed in regard to the first, second and third bills of exceptions. In reference, however, to the fourth exception, we think the prayers of the defendant were properly rejected, even conceding there is proof tending to show that the plaintiff committed the first assault; and we prefer placing our judgment on that ground.

Our opinion is, that when, to a plea of *son assault demesne,* a plaintiff puts in a general replication of *de injuria sua pro-*

*pria,* &c., although the defendant gives evidence of a first assault by the plaintiff, the latter may give proof of, and recover for, an excessive battery, beyond what was justified by the first assault; and, in order to enable him to recover, upon proof of such excessive battery, it is not necessary that he should new assign, or reply specifically.

We are aware that upon this subject the authorities are conflicting, but we think it will appear, from an examination of the reported cases, and the elementary writers referred to in the argument, that the weight of authority sustains the view we have taken.

*Judgment affirmed.*