## HENEKY *v.* SMITH.

DAMAGES FOR ASSAULT AND BATTERY.—In actions for assault and battery,
where malice is shown, the jury may give exemplary damages; and evi-
dence of the social rank and pecuniary circumstances of the plaintiff is
admissible in such cases.

TESTIMONY—ORAL, AS TO PHYSICAL OBJECTS.—The appearance and condition
of physical objects when material may be established by oral testimony,
without producing the objects themselves, or accounting for their non-
production.

IMPLIED ADMISSION FROM CIRCUMSTANCES.—The disposal of property by a
defendant, under peculiar or unusual circumstances, indicative of con-
sciousnes on his part of liability as charged in the action, operates as
an admission, and is equally competent to be proved against him.

EVIDENCE.—It is incompetent, in civil cases, to rebut specific proofs of intoxication by evidence of general habits of sobriety. The admission of improper evidence, which could not have injured the party complaining, does not justify a reversal.

APPEAL from Marion County.

*Bonham & Ramsey,* for appellant:

Contend that there is no ground for admitting evidence as to the amount of appellant's property, except as a basis for vindictive damages, which are not allowed in cases like this. The objection lies with much greater force to testimony as to the respondent's financial circumstances and family relations. And in some of the cases it is denied that evidence as to the latter facts is ever admissible. We think the weight of authority supports our view, and we are unable to perceive upon what principle the contrary doctrine can be sustained at all. The right to introduce such evidence in cases of slander, seduction and *crim. con.,* is asserted upon principles which do not apply to assaults. Citing, *Hunt* v. *Chicago & N. W. R. R. Co,* 26 Iowa, 373; *Shaw* v. *Boston, &c., R. R. Co.,* 8 Gray, 80; *Shea* v. *P. & B. V. R. R. Co.,* 44 Cal., 414 and 429; *Corning* v. *Corning,* 2 Seld., 97–104; *Pittsburg, Ft. Wayne, &c., R. R. Co.* v. *Powers,* 74 Ill., 341; *Smith* v. *Wunderlich, et al.,* 70 Ill., 426; *Sowell* v. *McDonald,* 58 Miss., 251.

The court erred in permitting respondent to testify as to the hat which he wore at the time of the affray. This was an instrument of evidence (code, p. 245, sec, 658) and was in the possession of the respondent. The hat itself was original evidence, and respondent's testimony as to its condition was secondary, and not admissible without proving the loss of the hat, or that it was out of his power to procure it.

The court certainly erred in permitting the respondent

to introduce the deed of appellant and wife to Coolidge and McClaine, "to show guilt on the part of Smith." The deed being fair and regular in every respect, it seems to us that a *private transaction* of that character could not be properly allowed and introduced "to show guilt on the part of Smith."

One of the presumptions of law is, " that private transactions have been fair and regular." (Code, p. 261, subd. 19 of sec. 766.)

*N. B. Knight and John Kelsay*, for respondent:

Claim that the record of the deed from the appellant to Coolidge & McClaine was material, because it was made soon after his assault on respondent Heneky, and soon after this action was commenced, and tended to show that the appellant was guilty of the assault and battery by seeking to save his property from the consequences of his act by disposing of it at that time. See code, p. 367, secs 210–11–12; 1 Starkie on Ev., pp. 558, 562 to 571; 1 Greenl. on Ev., sec. 12.

It was competent and material to show the condition of defendant's hat, as the complaint alleged a shooting in the head, its condition may be described by witnesses without producing the article itself. See *Commonwealth* v. *Pope*, 103 Mass., 440; *People* v. *Gonzales*, 35 N. Y., 62.

By the Court, WATSON, C. J.

The respondent, Heneky, brought this action to recover damages from the appellant, Smith, for wrongfully and maliciously shooting and wounding him with a pistol, at Silverton, Oregon, on September 28, 1881. The damages were laid at fifteen thousand dollars; he obtained a verdict and judgment for four thousand dollars. The appeal is from this judgment. The errors assigned in the notice of

appeal, and relied upon by the appellant to secure a reversal of the judgment of the circuit court, are involved in certain rulings of that court at the trial, upon the admission of evidence. Heneky, as a witness in his own behalf, having testified as to the time, place and circumstances of the shooting, proceeded as follows: "After I was shot, I did not know anything for about five days. I have not been able to do any work since I was shot. Have endured great pain." His counsel then asked him this question: "Have you any property?" Appellant duly objected, but his objection was overruled by the court. Heneky then answered as follows: "Well, I got a little, but I am in debt more than I am worth. It is timber land. I got no money." The respondent's counsel were then permitted to ask, and the respondent to answer, the following questions, over the appellant's objections: Ques. "Have you got any family?" Ans. "I have a wife and three children. The oldest is six years and two months old; the second is four years and one month old; the youngest, one year and three months old. The eldest is a boy—the others girls." Ques. "Upon whom did the wife and children depend for their support before you got hurt?" Ans. "They depended on me, and since I was hurt they and me have been supported by my neighbors and the county."

The admission of this testimony involves the first error assigned. We think it was admissible on two distinct grounds: First, As tending to show the extent of the respondent's injury. If he was not only accustomed, but under the necessity, to labor, to provide the means of support for himself and family previous to his being shot by the appellant, the facts of his not doing any labor afterwards, and of his depending on and receiving support for himself and family from his neighbors and the county, certainly did

corroborate his statement that he was not able to labor after receiving the injury complained of, and afforded some evidence for the consideration of the jury, in determining its extent and the amount of damages it produced. (*Caldwell* v. *Murphy*, 11 N. Y., 416.)

The second ground of its admissibility is broader, and perhaps even less questionable. The complaint makes a proper case for exemplary damages. It alleges that the injury was inflicted maliciously. We do not feel called upon to discuss the proposition that in actions of this character the jury may give exemplary damages, where malice on the part of the defendant is proven. (*Day* v. *Woodworth*, 13 How., 363.) But while appellant's counsel concede that it might have been competent to prove the pecuniary circumstances of their client, at the trial, with a view to the imposition of exemplary damages, if the proof should justify the conclusion that his act, by which the respondent was injured, was not only wrongful but malicious, they contend that the same rule did not apply to the pecuniary condition of the respondent. Greenleaf, in speaking of the amount of damages recoverable in actions of this class, gives expression to the following views:

"Nor are the jury confined to the mere corporal injury which the plaintiff has sustained; but they are at liberty to consider the malice of the defendant, the insulting character of his conduct, the rank in life of the several parties, and all the circumstances of the outrage, and thereupon to award such exemplary damages as the circumstances may, in their judgment, require." (Greenleaf on Ev., sec. 89.) In *Reed* v. *Davis*, 4 Pick, 215, Putnam, J., in discussing the question of excessive damages, in a case of trespass, accompanied with circumstances of harshness and oppression, on the part of the defendants, says: "But the jury had

reason to think that some, if not all, of the defendants knew, but wholly disregarded the provision of the law, and supposed that the trespass could be committed with impunity, on account of the poverty of the plaintiff; for one of the defendants (Goodred) stated to a witness, in answer to his inquiry, whether he thought the plaintiff could not make him suffer, that 'the plaintiff had been to gaol and sworn out, and *was not able to do anything.*' Now that circumstance was to be taken into consideration by the jury. * * * The plaintiff also was poor. He had seen better days, but had been reduced in his circumstances. He was thought not able to do anything in vindication of his rights at the law. But in this the defendants miscalculated. His case has been submitted to a jury of his country, and they have assessed $500 as the damages which he should recover. The jury seem to us to have manifested a strong sense of the security which the dwelling-house should afford to its lawful possessor. They have proceeded upon higher grounds of damages than those which arise merely from bodily wounds and bruises. They have discovered a determination to vindicate the rights of the poor against the aggressions of power and violence. These motives are sound and should be cherished; and we ascribe the amount of the verdict to these considerations, rather than to partiality, or passion or any unworthy motive." It is true, the decision in this case was affirmed on the appeal upon an equal division of the court; but it seems quite clear that the difference in opinion among the several members of the court was not as to the soundness of the general doctrine announced in the opinion delivered by Putnam, J., from which we have quoted so largely, but as to its application to the facts in this particular case. We have found no clearer or more satisfactory exposition of the grounds upon

which the admission of evidence as to the plaintiff's financial condition, in a case like the present, can be justified, than the opinion referred to. There are many authorities, however, which recognize and support the doctrine that such evidence is admissible in this class of cases, and we have discovered none to the contrary. (*Bump* v. *Betts*, 23 Wend., 85; *McNamara* v. *King*, 2 Gilman, 432; *Cochran* v. *Amon, et ux.*, 16 Ill., 316; *White* v. *Murtland*, 71 Ill., 250; *Gaither* v. *Blowers*, 11 Md., 536; *Buckley* v. *Knapp*, 48 Mo., 152; *Clements* v. *Maloney*, 55 Mo., 352.

Some of these were cases of seduction and some of slander. But we can perceive no distinction between cases of seduction and slander and cases of assault and battery, where malice is alleged and proven, so far as it concerns the right of the jury to give exemplary damages, and to take into consideration the rank and pecuniary condition of the plaintiff in order to arrive at a just conclusion as to the amount to be awarded.

The next exception taken by appellant was to the ruling of the circuit court allowing Heneky to testify to the condition of the hat he wore at the time of the shooting, when he first saw it afterwards, without either producing the hat or accounting for its absence. The appellant's objection was that such testimony was secondary. We think the rule invoked by him only applies to "writings," and has no application to a case like this. (Code, sec. 681; *Commonwealth* v. *Pope*, 103 Mass., 440; *The People* v. *Gonzales*, 35 N. Y., 49.)

The circuit court also admitted in evidence, as tending to establish appellant's liability in the action, a certain deed shown to have been executed by him and his wife to Coolidge & McClaine, of some twenty-five different lots or parcels of land, situated in Marion county, and amounting in

the aggregate to over four hundred acres, for the expressed consideration of twelve thousand dollars. This deed was executed October 12, 1881, fourteen days after the shooting, and six days, as appears from the record, after this action was commenced, and the summons served. The admission of this evidence was also duly objected to, and an exception taken to the ruling of the court admitting it to go to the jury. In view of its character and the circumstances under which it was executed, we think it was properly admitted. The jury might reasonably infer from this act of the appellant, in view of all its surroundings, that it was prompted by a consciousness on his part, that the shooting of the respondent was unjustifiable, and that he was legally liable for the damages occasioned by it. In this view, it would operate like an admission of liability, and be equally competent. "Admissions may be by acts, as well as by words." (2 Wharton's Law of Ev., sec. 1081; *Pennsyl. R. R.* v. *Henderson,* 51 Pa. St., 315; *McKee* v. *Bidwell,* 74 *id.,* 218; *Parker* v. *Montieth,* 7 Or., 277.)

The only remaining questions to be disposed of are whether the circuit court erred in admitting evidence of Heneky's character for sobriety, and if so, whether any injury to the appellant could have resulted therefrom? He had testified, on his cross-examination, in response to appellant's questions, that he had taken two drinks of brandy before the shooting occurred. The testimony he had already given on his direct examination, in connection with this admission on his cross-examination, showed that he had taken the two drinks of brandy not more than three or four hours previous to the shooting. The respondent afterwards introduced Charles Rosehart as a witness, who had seen Heneky immediately before the affray took place, and also saw the encounter during which Heneky was shot. In the course

of his direct examination he was asked if Heneky was
drunk? He answered without objection, that Heneky was
not drunk. He was then asked if Heneky was in the habit
of getting drunk? The appellant objected that the question
was incompetent and irrelevant, and the objection being
overruled by the circuit court, took the exception we are
now examining. The witness then answered in the nega-
tive. Afterwards the appellant introduced John Wolford
and Milton Fitzgerald, among others, as witnesses in his
own behalf; the former testifying upon this point that he
saw Heneky just before the affray, and that he thought he
was some in liquor; and the latter testifying as follows: "I
saw Heneky at my shop a short time before the difficulty
and had a business talk with him. He was considerably in
liquor, but was not what I would call drunk. He did not
stagger, but felt pretty good apparently." This was all
the evidence given upon the subject, at the trial, as appears
from the bill of exceptions.

There can be no doubt as to the incompetency of the tes-
timony offered and admitted, touching Heneky's general
character or habits for sobriety. That character was not in
issue in the case. It could not, in any possible view, affect
his right to recover, or the amount of his recovery. And
unless general character is involved in the issue, in this
sense, evidence in relation to it is inadmissible in civil ac-
tions. This is the doctrine of all the authorities. (*Porter*
v. *Seiler*, 23 Pa. St., 424; *Wright* v. *McKee*, 37 Vt., 161;
*McCarty* v. *Leary*, 118 Mass., 509.) But there was no
evidence even tending to show that Heneky was drunk on
this occasion. That he had been drinking brandy, he him-
self solemnly admitted on his cross-examination. The tes-
timony of Wolford and Fitzgerald, for the defense, did not
go beyond this admission. They both give it as their opin-

ion that he was "in liquor"—had been drinking—but neither states that he was drunk. Fitzgerald says expressly that he was not drunk; and his observations were made immediately previous to the affray, and in the course of a "business talk" he was having with him. If he was in a suitable condition to discuss "business" matters with Fitzgerald at that time, he was not drunk; nor does either this witness or Wolford intimate an opinion that he was. Rosehart testifies positively that Heneky was not drunk, but does not dispute that he had been drinking—was "in liquor." Now if it was material to ascertain Heneky's condition at the time of the affray, for any purpose, as to his being under the influence of intoxicating liquor, and the extent of such influence, here was the evidence, and all the evidence, bearing upon these questions—it is in unison upon the proposition that Heneky was not drunk. The jury could not honestly have come to any different conclusion on this point. Now, evidence that Heneky was not "in the habit of getting drunk" was not in conflict with any of the testimony on this point. If it had been admissible, its only tendency would have been to rebut evidence of his being drunk on the particular occasion. But there was no evidence of this kind here to rebut. Proof that a person is not in the habit of getting drunk has no tendency towards a conclusion that he does not occasionally, or even habitually, indulge in the use of intoxicating drinks. It would be unavailable in practice, if admissible in law, except to rebut a particular charge of drunkenness. From a careful consideration of all the evidence, we are fully convinced that there was no issue as to Heneky being drunk at the time of the affray, before the jury—nothing for him to rebut—and the proof of his general character for sobriety, although incompetent, could not have injured the appellant. In this view the

error complained of, in this respect, will not justify a reversal. (Hilliard on New Trials, 57 *et seq.; Forrest* v. *Forrest*, 25 N. Y., 501; *The People* v. *Gonzales*, 35 N. Y., 49.) We find no other errors than this in the rulings excepted to, and therefore affirm the judgment.

Judgment affirmed. LORD, J., concurring.