(Decided November 14th, 1894.)

---

# THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* THEOPHILUS BARGER.

*Carriers—Assault by Conductor—Evidence—Damages.*

In an action by a passenger to recover damages for an assault on him by the conductor of defendant's train, evidence that on some other occasion, the time and circumstances .of which are not mentioned, the plaintiff had used abusive and profane language to the conductor and made threats against him, is not admissible.

There may be cases in which the conduct of a passenger towards an employee, is such that the carrier would not be liable for an assault committed by the employee. But the mere fact that a passenger uses abusive and profane language to a conductor, does not justify an assault by him, and the carrier is liable for his act.

If the assault was provoked by the language used by the plaintiff, the jury are authorized to consider such provocation in mitigation of damages. But when the fact that he used such language is denied by the plaintiff, the jury cannot be instructed that from all the evidence in the case, the plaintiff is not entitled to recover exemplary damages.

Under the circumstances of this case, an instruction that the jury are "at liberty to consider the violent character of the defendant's conduct and the outrage to the feelings of the plaintiff, and thereupon award such exemplary or punitive damages as the circumstances may in their judgment require," was correct.

Appeal from the Circuit Court for Washington County.

The appellee, while a passenger on defendant's train, was assaulted by the conductor, and brought an action against the appellant to recover damages. The evidence on the part of the defendant tended to show that the assault was provoked by threatening and profane language on the part of the plaintiff, while this was denied by the latter. The first exception was taken to the refusal of the Court, (STAKE, J.) to allow the conductor to be asked whether, on some other occasion, the plaintiff had not uttered threats against him. The second exception was taken to the granting of the plaintiff's prayers and the rejection of seven prayers of the defendant. The instructions granted by the Court were as follows:

*Plaintiff's First Prayer.*—The plaintiff, by his counsel, prays the Court to instruct the jury, under the pleadings and evidence in the cause, that if they believe from the evidence that on the 29th day of January, 1892, the plaintiff was a passenger on the cars of the defendant from Brunswick to Weverton, in this State; that he had a ticket entitling him to be carried on said cars from Brunswick to Weverton, and that while he was such passenger on said cars, he was assaulted and struck by the conductor of said cars, that then their verdict must be for the plaintiff.

*Plaintiff's Second Prayer.*—That in estimating the damages sustained by the plaintiff, the jury are not confined to the mere corporal injury sustained by him, but that they are also at liberty to consider the violent character of the defendant's conduct, and the outrage to the feelings of the plaintiff, and thereupon to award such exemplary or punitive damages as the circumstances may, in their judgment, require.

*Defendant's Seventh Prayer.*—If the jury believe from the evidence that the plaintiff used foul and profane language to the conductor of the defendant in order to provoke an assault by said conductor, with the purpose of bringing this action for damages, the jury are to consider such conduct in mitigation of damages, if they should find for the plaintiff.

The prayers offered by the defendant and refused by the Court were as follows :

*Defendant's First Prayer.*—If the jury find from the evidence that at the time of the injury complained of, the conductor had taken up the plaintiff's ticket, and that the plaintiff then used foul and abusive language to the conductor, and that such conduct on the part of the plaintiff, if the jury find such, caused or provoked the assault complained of, and that in making said assault, if the jury so find, the conductor was not acting for the defendant and within the scope of his duties as conductor, but was carrying out a personal purpose and feeling, then the defendant is not liable for such act of the conductor, and the plaintiff cannot recover.

*Defendant's 2nd Prayer.*—If the jury believe from the evidence that the plaintiff handed his ticket to the conductor on the day of the injury complained of, and then, in the presence and hearing of other passengers, used grossly profane and abusive language to the conductor, without any provocation on the part of the conductor, then he was guilty of such a breach of decorum as forfeited his right to be carried as a passenger and for the assault made by the conductor, if they so find, the plaintiff is not entitled to recover more than nominal damages.

*Defendant's 3rd Prayer.*—If the jury believe from the evidence that the plaintiff handed his ticket to the conductor on the day of the injury complained of, and then, in the presence and hearing of other passengers, used grossly profane and abusive language to the conductor, without any provocation on the part of the conductor, then he was guilty of such a breach of decorum as forfeited his right to be car-

ried as a passenger, and for the assault made by the conductor, if the jury find such assault, the plaintiff is not entitled to recover, and the verdict of the jury must be for the defendant.

*Defendant's 4th Prayer.*—If the jury find from the evidence that the injury complained of was caused or provoked by the plaintiff himself, he is not entitled to recover.

*Defendant's 5th Prayer.*—If the jury find from the evidence that the injury complained of was caused or provoked by the plaintiff himself, he is not entitled to recover compensatory or exemplary, but nominal damages only.

*Defendant's 6th Prayer.*—That from all the evidence in the cause the plaintiff is not entitled to recover exemplary damages, but such damages only as will compensate him for the injury done him, in estimating which the jury are at liberty to consider the offensive language of the plaintiff (if they shall find that he used such language), in mitigation of the damages.

*Defendant's 8th Prayer.*—If the jury believe from the evidence that the plaintiff used foul and profane language to the conductor of the defendant's train, in order to provoke an assault by said conductor, with the purpose of bringing this action for damages, the plaintiff cannot recover.

The cause was argued before ROBINSON, C. J., BRYAN, MCSHERRY, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*J. Clarence Lane* (with whom were *John K. Cowen* and *Henry H. Keedy, Jr.*, on the brief), for the appellant.

A railroad company is not liable to a passenger for the wilful act of its employee, unless the same was done in the course of the servant's employment, and while the relation of carrier and passenger still subsisted. *Central Ry. Co.* v. *Peacock*, 69 Md. 257 ; *Gilliam* v. *S. & N. Ala. R. R. Co.*, 70 Ala. 268 ; 15 A. and E. R. Cas., 138, and notes. The plaintiff, by his own improper conduct, had forfeited his rights as a passenger, and could have been ejected from the

train. He was therefore a mere stranger, and entitled, only to the consideration of such. *N. O. R. R. Co.* v. *Jopes*, 142 U. S. 18. It is not more the duty of railroad companies to transport their passengers safely, than it is the duty of passengers to behave in a quiet and orderly manner. *P. Ft. W. & C. Ry. Co.* v. *Hinds*, 53 Pa. St. 512. Whether or not the act in question is outside of the scope of the servant's duty, is for the jury; unless clearly independent and outside of such scope, when it will be so pronounced by the Court. *Dwinelle* v. *N. Y. C. R. R. Co.*, 120 N. Y. 117; 15 A. & E. R. Cas., 141, note; *B. & O. R. R. Co.* v. *Blocher*, 27 Md. 277; *Little Miami, &c., Co.* v. *Wetmore*, 19 Ohio St. 110; *Bayley* v. *M. & L. Ry. Co.*, L. R., 7 C. P. 415; *Mulligan* v. *N. Y., &c. Co.*, 129 N. Y. 50; *Patterson on Railway Ac. Law*, §§. 120, 121; 2 *Wood on Railroads*, pp. 1380 and 1381, and notes. Where a passenger by his own misbehavior, while being transported, provokes a personal encounter between himself and one of the carrier's employees, the carrier is not liable. *Scott* v. *Central Park R. R. Co.*, 53 Hun. 414; *Harrison* v. *Fink*, 42 Fed. R., 787; *Little Miami R. R. Co.* v. *Wetmore*, 19 Ohio St. 110.

The second, fifth and sixth prayers of the defendant should have been granted. There was no justice in the plaintiff's claim for punitive damages. For, even if words of provocation alone are not held to justify an assault upon a passenger by the conductor, they may be considered in mitigation of damages. *Haman* v. *Omaha R. R. Co.*, 52 N. W. Rep. 830; *P., W. & B. R. R. Co.* v. *Hæflich*, 62 Md. 300; *P., W. & B. R. R. Co.* v. *Rice*, 64 Md. 63. The duties of carrier and passenger are reciprocal. It has been held that a railroad company is liable to a passenger for insults and abusive language used by an employee to him. *La Fitte* v. *N. O. R. R. Co.*, 43 La. An. 34; *Palmeri* v. *Man. El. R. R. Co.*, 39 N. Y. 23; *Conger* v. *St. Paul R. R. Co.*, 45 Minn. 207. The whole case should have been submitted to the jury, whether the plaintiff had broken the contract of carriage and had forfeited his rights as a passenger, and was

the real producer of the injury.   If the jury had so found, it would have relieved the defendant from the strict rule of liability for acts of servants towards passengers.   It would at least have disentitled the plaintiff to punitive or vindictive damages.   *N. O. R. R. Co.* v. *Jopes,* 142 U. S. 18 ; *N. J. Steamboat Co.* v. *Brockett,* 121 U. S. 667.

*Fred. J. Nelson,* for the appellee.

The two prayers of the plaintiff were properly granted. *Blocher's case,* 27 Md. 287 ; 2 *Beach Law of Railroads,* 1002.   The propositions of law contained in the appellant's seven rejected prayers are unsound, and besides, the fourth, fifth and sixth are too general.   *Cook* v. *Duvall,* 9 Gill, 461.

BOYD, J., delivered the opinion of the Court.

This was an action brought by Theophilus Barger, the appellee, againt the Railroad Company for an alleged assault upon him by the conductor in charge of the train on which the appellee was a passenger.   The evidence was conflicting as to the conduct of Barger.   He testified that he was riding on the step of the rear car, as the train was crowded ; that when the conductor came out on the platform he handed him his ticket and remarked to the conductor : "You did not get all your tickets to-night ;" that the conductor accused him of applying an opprobious epithet to him, which he denied, and the conductor struck him with his fist and then with his lantern.   The conductor testified, that he collected Barger's ticket, who then said to him : "You thieving s—— of a b——, you had better get them all or I'll report you."   He acknowledged that he then struck Barger with his fist, and claimed that the latter grabbed him by the collar, and he (the conductor) then struck him with his lantern, just as the train was leaving Knoxville.   It is admitted that the difficulty occurred between the points embraced in appellee's ticket, which was good from Brunswick to Weverton.   The conductor further testified, that when they reached Weverton, he said : "If you want any more

out of me I will get down with you ;" and Barger replied : "I have got you just where I want you, and will sue the company."

The witness was then asked by the defendant's attorney "if before this, on some other occasion and on a different day, Barger had used abusive and profane language to him on the train, and made threats against the witness." That was objected to and the Court refused to let the question be asked or answered. This ruling of the Court is brought here for review by the first bill of exceptions. Without deciding how far, if at all, that character of testimony would be admissible in a case of this kind, if properly presented, it is manifest that the evidence disclosed in the record is too remote and indefinite. It was not stated how long before, on what occasion or what day it occurred, although it is affirmatively shown that it was on a day different from that of the assault. The ruling of the Court was therefore clearly right. If any authority be necessary, the case of *Gaither* v. *Blower*, 11 Md. 536, is in point.

At the conclusion of the testimony, the plaintiff offered two and the defendant eight prayers. Both of the former were granted and all of the defendant's were rejected, with the exception of the seventh. The rulings of the Court in these prayers are presented by the second bill of exceptions. The first, third, fourth and eighth prayers of the defendant deny the right of the plaintiff to recover at all, if the jury believed the facts stated in them.

The first is in substance that if the jury believed the plaintiff used foul and abusive language to the conductor which caused or provoked the assault complained of, and that in making said assault the conductor was not acting for the defendant and within the scope of his duties as conductor, but was carrying out a personal purpose and feeling, the defendant was not liable for such act of the conductor. The theory of that prayer is that the plaintiff had by his conduct forfeited his right as a passenger, and the act of the conductor was merely a personal matter between him

and the plaintiff, provoked by the latter, independent of and freed from the relation that had existed between the plaintiff and defendant as passenger and carrier.

To such a doctrine we cannot subscribe, under the circumstances of this case. There may be, and doubtless are, cases in which the conduct of a passenger towards the employee of a railroad company was such that the company would not be liable for the act of the employee. A conductor, for example, would be justified in the defence of his own person, or the property of the company in his charge, in using such force as would be necessary for their protection against a passenger or anyone else, without rendering the company liable. Because he occupies the position of a conductor, and his assailant, that of a passenger, does not deprive the former of the right of defending himself, or the property in his charge, so far as it becomes necessary. But that is not this case. The plaintiff was, at the time of the assault, a passenger on the train which was in charge of this conductor, who was the agent of the company to see, as far as he reasonably could, that the plaintiff and other passengers were properly treated and carried to their respective points of destination. If the plaintiff persisted in misbehaving on the train either by the use of foul and abusive language toward the conductor, or in any other way calculated to frighten or materially interfere with the comfort and safety of the other passengers, after being admonished by the conductor, the latter would have been justified in ejecting him from the train. The remedy in such case would be to eject the unruly passenger—not to assault him and then let his employer escape all liability, because he, the conductor, was carrying out a "personal purpose and feeling," as stated in the prayer. A conductor of a train, doubtless, has his patience and forbearance severely tested at times, but he must not settle his own personal difficulties with the passengers, whilst they are such, any more than he should permit others to do so, when he could avoid it. If he has the opportunity to pre-

vent an assault on a passenger in his charge, it is his duty to do so, and his failure to make a reasonable effort to protect the passenger from such assault, would make the company responsible.   If that be a correct statement of the law, as it undoubtedly is, as settled by the case of the *New Jersey Steamboat Company* vs. *Brackett*, 121 U. S. 645, and numerous other authorities, then *a fortiori*, the company must be liable if the conductor makes an assault on one who is still a passenger as Barger was.

In the case of *Central Railway Company* vs. *Peacock*, 69 Md. 257, cited by the appellant, the plaintiff had left the car and had ceased to be a passenger, and hence, when the assault was made, the conductor " stepped aside from the line and scope of his employment," and therefore the company was not liable.   The Court indicated very clearly, however, that if the assault had been made whilst the plaintiff was a passenger, and the driver (who was also acting as conductor) was still executing "the contract of transportation," the company would have been responsible.   To hold otherwise would put a passenger at the mercy of the temper of a conductor.

Much of what we have already said applies to the third, fourth and eighth prayers.   The third is to the effect that if the plaintiff used grossly profane and abusive language to the conductor in the presence of other passengers, without any provocation on the part of the conductor, he forfeited his right to be carried as a passenger, and the defendant was not liable for the assault.   That was properly rejected for reasons already stated.   The fourth is still more objectionable, as it is altogether indefinite and too general to guide the jury as to what would be deemed a sufficient cause of provocation to relieve the defendant, even if the theory contended for by it be correct.   The eighth is likewise defective, and there is no legally sufficient evidence to show that the plaintiff used the language complained of to provoke an assault by the conductor for the purpose of suing the company.   No such inference could properly be drawn from the

expression used by Barger, as testified to by the conductor, that "I have got you just where I want you, and will sue the company."

Whilst the language used by the plaintiff, according to the defendant's evidence, did not justify an assault by the conductor, it was certainly calculated to irritate him and arouse his passions, and hence, it becomes material as to whether the remaining prayers of the defendant and the second of the plaintiff properly presented the law applicable to the measure of damages to be allowed. The second and fifth prayers of the defendant undertook to confine the recovery to nominal damages. The second is like the third, and the fifth is the same as the fourth, excepting the third and fifth deny the right of the plaintiff to recover at all, whilst the other two limited his recovery to nominal damages. No authority has been cited, and we know of none, that would have justified the Court in granting those prayers under the facts in this case. The sixth prayer asked the Court to instruct the jury, " that from all the evidence in the cause the plaintiff is not entitled to recover exemplary damages, but such damages only as will compensate him for the injury done him, in estimating which the jury are at liberty to consider the offensive language of the plaintiff (if they should find that he used such language), in mitigation of the damages." We agree fully with the learned counsel for the appellant in his contention that if the jury believed the assault was provoked by the language used by the plaintiff, as testified to by the conductor and others, they were authorized to take the provocation into consideration in mitigation of damages. Whilst the law will not justify an assault on account of words used towards the assailant, it does recognize, as was said by LE GRAND, C. J., in 11 Md. 552, " the weakness and infirmities of human nature which subject it to uncontrollable influences when under great and maddening excitement superinduced by insults and threats." But this prayer does not properly present the question. It disregarded the evidence of the plaintiff him-

BALTO. & OHIO R. R. CO. vs. BARGER.      33

Md.]                    Opinion of the Court.

self, who denied that he had used the language complained of. The Court could not therefore instruct the jury that *"from all the evidence in the cause* the plaintiff is not entitled to recover exemplary damages," etc., for if the jury believed the plaintiff, the assault was wholly unjustifiable, and such an one as would very properly call for exemplary or punitive damages. It may be true that the great preponderance of the testimony in the record contradicts the plaintiff, but it was for the jury and not for the Court to determine which was true. That prayer was therefore properly rejected.

It only remains to pass upon the plaintiff's prayers. We have already said that the conduct of the plaintiff, as disclosed by the record, did not justify the assault made by the conductor. We think the plaintiff's first prayer is in accord with that conclusion. In some cases the word "assaulted," as used in this prayer, might be objectionable on the ground that the Court left it to the jury to find whether or not, while the plaintiff was a passenger on the cars, he was *assaulted* and struck by the conductor. It is for the Court and not for the jury to determine whether certain facts amount in law to an assault. *Handy* v. *Johnson*, 5 Md. 450. But in this case the defendant was not injured thereby, as at most the Court, at the instance of the plaintiff, left to the jury to decide, as a matter of fact, what the Court on application would doubtless have decided, as a question of law. The word "assault" was moreover evidently not intended in its technical sense, as its context shows ; and in the connection in which it was used was not calculated to mislead the jury or injure the defendant.

The only question remaining to be passed upon is the ruling on the second prayer of the plaintiff. That it announces a correct principle of law in the abstract may be admitted, but whether or not it was misleading under the circumstances of this case is not altogether free from doubt. It certainly might have been drawn in a way that would have been more clearly unobjectionable.

It is not every case of assault that authorizes a jury to

award exemplary damages. Whilst the provocation of the plaintiff may not *justify* an assault, yet if it be of such character as would naturally arouse the anger and passions of men of ordinary temperament, and it is not too remote, it is admissible in mitigation of damages. The authorities differ somewhat as to whether evidence of recent provocation can be admitted in mitigation of compensatory damages. In Wisconsin it has been held that it cannot be. *Corcoran* v. *Harrau,* 55 Wis. 122. Whilst in New York (*Kiff* v. *Youmans,* 86 N. Y. 330), and in Pennsylvania (*Robinson* v. *Rupert,* 23 Penn. 523), it has been decided that it may mitigate compensatory as well as punitive damages. It is said in *Robinson* v. *Rupert* (23 Penn. 323, *supra*), that " where there is a reasonable excuse for the defendant arising from the provocation or fault of the plaintiff, but not sufficient entirely to justify the act done, there can be no exemplary damages and the circumstances of mitigation must be applied to the actual damages. If it were not so the plaintiff would get full compensation for damages occasioned by himself." But the authorities agree that sufficient provocation (of which the jury is ordinarily left to judge) will at least mitigate exemplary damages in actions for assaults, and the conduct of a passenger may be such as to preclude his right to exemplary damages for an assault by a conductor or other employee of a railroad company. We are not prepared, however, to say that under the circumstances of this case, the conduct of Barger, as disclosed by the evidence of the defendant in the record, was such as would have justified the Court below in instructing the jury, as a question of law, that they could not award punitive damages for the assault made on him. The conductor's own testimony shows that he not only struck Barger with his fist when the epithet was applied to him, but he followed it up with a blow over his head with the lantern. It would require very great provotion to justify a conductor in charge of a train using such violence on one in his care. It might have resulted in a riot or other serious trouble on that heavily loaded train to

the great discomfort and danger of the other passengers. If the plaintiff's statement was believed by the jury the defendant was unquestionably liable for punitive damages, and this prayer submitted his theory of the case. By it the jury was *at liberty* to *consider* the violent character of the conductor's conduct and the outrage to the feelings of the plaintiff, and *thereupon*, to award such exemplary or punitive damages *as the circumstances in their judgment required.*

The defendant had the right to present its theory of the case in mitigation of damages—which is a matter of defence—but its prayers on the subject, as we have already determined, did not properly present the question. It would have been right for the Court to have granted an instruction of its own, but it was not required to do so, unless requested by prayers free from the defects pointed out in those that were offered. As the jury were simply told that they were *at liberty* to consider the character of the assault, and award such punitive or exemplary damages, as the circumstances in their judgment would require, they could have taken into consideration the conduct of the plaintiff, as well as of the conductor, in making up their verdict and the amount of the verdict rendered shows they were not inclined to punish the defendant very severely, if they allowed any punitive damages at all. The second prayer of the plaintiff in *Byers v. Horner*, 47 Md. 23, used language very similar to that in this prayer, and this Court said it ought to have been granted. Taking all the circumstances into consideration, we are of the opinion that there was no error in granting this prayer, and the judgment must be affirmed.

*Judgment affirmed with costs.*

(Decided November 14th, 1894.)