## THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* GEORGE J. STRUBE.

*Evidence on Cross-Examination in Action of Assault—Excessive Force in Making Arrest of Trespasser by Railway Company's Agent Commissioned as Peace Officer—Questions for the Jury—Assault Following Upon Arrest—Mitigation of Damages by Reason of Plaintiff's Provocation—Instructions.*

When the question is whether a wanton assault was made upon the plaintiff at the time of his arrest, the person who made the arrest may be asked, upon cross-examination, if he had ever himself been arrested and convicted of an assault and battery, and if he had been convicted of an assault on the occasion in question giving rise to the action of damages.

Although the arrest of a person may be justifiable, still, if an injury is inflicted upon him by the use of excessive and unnecessary violence, the one who made the arrest or his employer is liable therefor.

In an action against a railway company to recover damages for injuries caused by the excessive violence used by its employee X. while arresting the plaintiff, the latter's evidence was to the effect that X. arrested him for trespassing upon the company's property, and immediately thereafter knocked him down and beat him severely, before taking him to a police magistrate. X. was also commissioned by the Governor as a special officer. The defendant alleged that in making the arrest X. acted as an officer of the State, and not as its employee, and also that if not in making the arrest, then afterwards X. acted as a State officer in making the assault. *Held,* that the question whether in making the arrest X. acted within the scope of his employment as an agent of the defendant or as an officer of the State, is one for the jury.

*Held,* further, that the arrest and the subsequent assault upon the plaintiff are to be treated as one transaction, and that whether X. acted as defendant's agent in making the arrest is not to be separated from the question whether he so acted in making the assault, and that if X. acted within the scope of his employment in making the arrest, the defendant is liable for his malice in committing the assault.

If the plaintiff was liable to arrest for the trespass, the fact that he brought about the same by an altercation with X. and then provoked the assault by resisting the arrest, would not wholly exonerate the defendant from liability for the use of excessive force by X., though such provocation may be considered in mitigation of punitive damages.

Consequently in a case where there is evidence of provocation on the part of the plaintiff leading to his arrest and the assault upon him. a prayer instructing the jury in general terms that he is entitled to vindictive and punitive damages is erroneous.

*Decided June 30th, 1909.*

Appeal from the Court of Common Pleas of Baltimore City (Elliott, J.).

*Plaintiff's 2nd Prayer.*—If the jury find from the evidence that the plaintiff was walking on the tracks of the de-

fendant, a body corporate, on or about March 1st, 1908, as testified to, and if they further find that William J. McCarron was in the employ of the said defendant as detective or special officer and while the said McCarron was acting within the scope of his authority and in the course of his employment arrested the plaintiff and in doing so and while the plaintiff was under arrest used an excessive and unnecessary amount of force and inflicted unnecessary indignities upon the plaintiff, then the verdict of the jury must be for the plaintiff, even though the defendant's agent was justified in arresting the plaintiff.  (*Granted.*)

*Plaintiff's 3rd Prayer.*—If the jury believe from the evidence in the cause that the plaintiff was injured by the agent and servant of the defendant as alleged by the plaintiff, and that the assault and battery was wanton, unprovoked and excessive in its nature, then they can inflict vindictive and punitive damages upon the defendant.  (*Granted.*)

*Defendant's 6th Prayer.*—If the jury find that the assault occurred either while McCarron was solely engaged in the performance of his duties as a police officer and not as an employee of the defendant, if they so find, or that the assault occurred as the result of a personal argument or altercation between the plaintiff and said McCarron, then the plaintiff is not entitled to recover, and their verdict must be for the defendant.  (*Refused.*)

*Defendant's 7th Prayer.*—If the jury find from the evidence that after the plaintiff had been arrested, he resisted arrest and struck at McCarron twice, and that McCarron thereupon struck the plaintiff once, as testified to, if they so find, and if they further find that McCarron either struck the plaintiff in self-defense, or because it was necessary to make him go to the station house, then the plaintiff is not entitled to recover and their verdict must be for the defendant.  (*Granted.*)

*Defendant's 8th Prayer.*—That the defendant is not liable for every act done by McCarron as he acted both in the capacity of its private employee and in the capacity of police

officer of the State of Maryland; that the defendant would
be liable for all acts done by McCarron as its employee which
would include the performance of his duties as such em-
ployee among which duties are, as testified to by himself,
the duty to protect the defendant property, to drive tres-
passers therefrom, to examine seal records on cars and to
see that the doors of cars containing merchandise are closed;
but that the defendant would not be liable for acts done by
McCarron in his capacity of police officer for the State of
Maryland, among the duties of which office are, to make ar-
rests on the defendant's property for violations of the law
which he sees thereon committed. (*Refused.*)

*Defendant's 9th Prayer.*—If the jury find from the evi-
dence that the arrest was actually completed before any blow
was struck, then the plaintiff is not entitled to recover, and
their verdict must be for the defendant, even though they
find that McCarron did, in the manner testified to, strike the
plaintiff. (*Refused.*)

The cause was argued before BOYD, C. J., PEARCE,
SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*Duncan K. Brent* and *Carville D. Benson* (with whom
was *Allen S. Bowie* on the brief), for the appellant.

*William H. Lawrence* and *David Ash,* for the appellee.

WORTHINGTON, J., delivered the opinion of the Court.

The gravamen of the action in this case is the alleged use
of excessive force and violence upon the appellee by William
J. McCarron, a special officer of the appellant, in connection
with the appellee's arrest for trespassing upon the appel-
lant's property and right of way. The judgment below was
for $1,000 damages in favor of the plaintiff, and the de-
fendant has appealed.

The substantial facts of the case as testified to by the wit-
nesses for the plaintiff are as follows: On March 1, 1908,

plaintiff with four companions was returning along the tracks of the Baltimore and Ohio Railroad Company from a visit to a gypsy camp in Baltimore County. When plaintiff and his campanions had crossed the Viaduct bridge which separates Baltimore County from Baltimore City, Mr. Mc-Carron walked up behind the plaintiff, grabbed him back of the neck and said "you are under arrest, didn't I tell you to stay off this railroad?" To which the plaintiff replied: "Yes, I suppose you did, but that has been six months or so ago, and it kind of left my memory."

Plaintiff then desired to be taken to the Southwestern Police Station in Baltimore City, but McCarron said he should go to Mt. Winans Police Station in Baltimore County. McCarron then still holding the plaintiff by the collar with one hand, and without plaintiff making any resistance, struck plaintiff several blows about the face with the other; then dragged him across the track, knocked him down and beat him while he was down. That as a result of the assault, plaintiff was rendered unconscious, two of his front teeth were knocked out, his lips were cut and swollen to twice their normal size, his mouth was bleeding, his right ear was swollen, his hearing imparied, and his neck also was swollen and painful.

After the assault, plaintiff went with McCarron to the Mt. Winans Police Station where the charge was preferred against him of trespassing on the property of the appellant, to which charge he plead guilty and was fined $2.20 which was paid and plaintiff thereupon released.

The plaintiff also called McCarron as a witness, who testified that in March, 1908, he was employed by the B. & O. R. R. as special officer, that he was assigned to duty on the Baltimore Division, that his duties were to look after the company's property and also the care of records and car seals, to see that all the merchandise cars had their seals on arrival; and also that he had power to arrest people as trespassers; that on March 1, 1908, he arrested Strube and

charged him with trespassing on the property of the Baltimore and Ohio Railroad.

On cross-examination McCarron stated that his power to arrest came from his commission as special officer. The commission was then offered in evidence, but does not appear in the record.

The testimony of the defendant's witnesses, in so far as it conflicts with that introduced on behalf of the plaintiff, was substantially as follows: That after Strube and his companions had passed over the Viaduct bridge and had gone about fifteen feet within the limits of Baltimore City, McCarron came behind and calling to Strube, asked him if he had not warned him to stay off the railroad property, and further said: "If you come back here I am going to take you to the station house." To which Strube replied, "you can lock me up now if you are able."

Whereupon McCarron took hold of Strube by the collar to arrest him, Strube made several passes at the officer, in the effort to hit him, and then the officer, still holding to Strube with his right hand, struck him with his left hand. Strube "fell and kept his hands over his face like he was holding on to the cross ties." That it was not true that McCarron struck the plaintiff more than once, or that the plaintiff became unconscious, or that plaintiff did nothing to resist arrest, or that McCarron cursed the plaintiff, or that he struck the plaintiff while he was down.

On cross-examination, by the plaintiff's attorneys, McCarron testified as follows:

"Q. When he said, you can't take me in now, if you wanted to; that insulted you?

"A. Yes, sir.

"Q. You took him then?

"A. Yes, sir.

"Q. If he had not said that, you wouldn't have taken him in at all?

"A. No, sir; if he had gone on, no, sir.

"Q. You did it just to spite him?

"A. No, no.

"Q. Did you say anything to the other boys?

"A. He told me I might arrest him if I was able, and then I arested him.

"Q. You arrested him to show you were able?

"A. It looks that way."

. We have given the substance of the testimony on both sides, at some length, so that the questions of law presented by the prayers may be clearly understood.

During the progress of the trial the following questions were asked of McCarron on cross-examination and allowed to be answered against the defendant's objection:

"Q. How often have you been convicted of assault in Baltimore City or Baltimore County?

"A. I was arrested once when I was sixteen years old at a dance in Cowen's Hall, up here, and the man got fighting and I was arrested.

"Q. You were arrested and convicted at the Southwestern Police Station for this assault upon Strube, were you not?

"A. Yes, sir."

Separate exceptions were taken to the rulings of the trial Court as to both of these questions, but as they both involve, in part, the same principle of law, they will be considered together.

The ground upon which this evidence is sought to be justified is that it "goes to the credibility of the witness." More properly speaking it may be said to affect the weight of the witness' testimony in this case. Indeed the first question seems to have been framed with a view to eliciting information concerning the witness' general disposition for fighting. But in either aspect we think the question was admissible under the circumstances.

The issue was whether McCarron had made an unjustifiable assault upon the plaintiff. The plaintiff's testimony tended to prove that the assault was not justified. McCarron's tended to prove that it was. If the answer to the first question had shown that McCarron had been convicted of a

number of assaults it would have reflected upon the weight of his testimony as the justification for the assault in this case. The answer however was of such a negative character as to be of little value either for or against the plaintiff and even if error it would have been harmless error.

The second question objected to, is admissible for the same reason as the first. The answer affects the weight of McCarron's testimony as to the character of the assault, and therefore in a sense his credibility as a witness. The case of *Mattingly* v. *Montgomery,* 106 Md. 461, is directly in point. The cases cited by appellant in support of its contention that such evidence is not admissible are not apposite.

Such evidence would not be admissible in chief for. the purpose of proving the fact of the assault, but the questions are proper upon cross-examination of the person charged with committing the assault.

The third exception found in the record relates to the prayers. The principal points of the defendant's contention in regard to these are (1) that in making the arrest, McCarron acted as a commissioned officer of the State of Maryland, and not as an employee of the defendant, but if this first proposition be unsound, then (2) as soon as the arrest was completed, McCarron lost his dual capacity of officer and agent, ceased to be an employee of defendant and became only an officer of the State of Maryland, and that therefore defendant is not liable for the *assault.*

As to the first proposition, the commission spoken of is not in the record, and we are uninformed as to what authority it conferred upon McCarron, but assuming that it was a commission issued by the Governor under section 403 of Article 23 of the Code, we yet cannot yield our assent to such a proposition.

McCarron testified that he was in the employ of the defendant at the time of the arrest, that his duties were to look after the company's property, and that he had power to arrest trespassers.

We must assume that the plaintiff in walking along the right of way of the defendant company, was violating the law, for when taken before a Justice of the Peace, he plead guilty to the charge of "trespassing on the property of the Baltimore and Ohio Railroad."

The Court could not say as a matter of law that in making the arrest, McCarron was not acting within the scope of his employment as special officer of the defendant, or that he was then acting solely under his commission as an officer of the State of Maryland.

Such a question was one proper to be submitted to the jury under all the evidence in the case. As was said by this Court in *Deck's Case,* 102 Md. 669, at page 677, "the question whether the special officer or detective was acting within the scope of his employment as an employe of the company at the time of the commission of the act complained of, was a question for the jury to pass upon under all the facts and circumstances of the case."

Neither could the Court declare, under the evidence in the case that if the assault was made after "the arrest was actually completed" then the plaintiff was not entitled to recover.

An arrest is the seizing of a person and detaining him in the custody of the law. 1 *Bouvier Law Dict.,* 166. An officer authorized to make an arrest may use necessary force. *Ibid.*

In this case both the arrest and the assault occurred on the railroad tracks of the defendant as part of one and the same transaction, apparently within the space of a very few moments of time, and it would not do under such circumstances for the Court to say or submit to the jury to say, that immediately after putting his hands on Strube and saying "I am going to put you under arrest," that thereafter McCarron ceased to be an employee of the defendant and became merely an officer of the State.

If McCarron was acting within the scope of his employment in making the arrest, the defendant would be responsi-

ble even if McCarron acted maliciously or wilfully in committing the assault, because the whole occurrence was but one transaction.

If McCarron was not acting within the scope of his employment in making the arrest, then of course the defendant would not be liable.

In this case the arrest and the assault must be treated as so merged together into one transaction as to be scarcely separable for practical purposes, even though theoretically they could possibly be regarded as distinct acts.

The ground of the master's responsibility for the malicious torts of his servants or agents is this, that where one of two innocent persons must suffer for the wrong of a third, the loss must fall upon him who has enabled the third person to do the wrong.

McCarron was a special officer employed and paid by the appellant, and assigned to duty on the Baltimore Division of its right of way. His selection was the appellant's and the appellant must bear the responsibility of his acts, if done within the scope of his employment. As stated by JUDGE BOYD in the case of *Consolidated Ry. Co.* v. *Pierce,* 89 Md. 503, if the servant was acting at the time in the course of his master's service, and for his benefit, within the scope of his employment, the mere fact that he acted unlawfully, wilfully or wantonly, does not necssarily show that he is no longer in his master's employ.

We think there was evidence in the case proper to be submitted to the jury as to whether McCarron when he arrested the plaintiff was acting within the scope of his employment or not.

We must hold therefore that defendant's first special exception was properly overruled, and the plaintiff's second prayer properly granted. The defendant's objection to this prayer, based on the instruction taken from *Twilley's Case.* 106 Md. 445, cannot be sustained, because that was a prayer offered by the defendant and presents a counter proposition to that contained in the plaintiff's second prayer.

It would have been entirely proper for the Court below to have granted a prayer concluding for the defendant, modelled after the one referred to in the *Twilley's Case, supra,* but no such prayer seems to have been offered, and as we have said we see no objection to the form of plaintiff's second prayer as granted.

We think, however, that the form of the plaintiff's third prayer as to the measure of damages is objectionable.

In the case of *Smith* v. *P. W. & B. R. R. Co.,* 87 Md. 52, this Court said, quoting from *Quigley's Case,* 21 How. 213, that, "whenever the injury complained of has been inflicted maliciously or wantonly and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of simple compensation for the wrong committed against the aggrieved person. But the malice spoken of in this rule is not merely the doing of an unlawful or injurious act. The word implies that the act complained of was conceived in the spirit of mischief or of criminal indifference to civil obligations."

And in *B. & O.* v. *Barger,* 80 Md. 34, the Court said: "Whilst the provocation of the plaintiff may not justify an assault, yet if it be of such character as would naturally arouse the anger and passion of men of ordinary temperament, and it is not too remote, it is admissible in mitigation of damages."

There is some evidence in this case to the effect that Strube provoked McCarron to arrest him by "bouncing out of the gang," and starting an altercation with the officer, and afterwards provoked the assault by resisting arrest, and while not meaning to say that the plaintiff is not entitled to something more than compensatory damages, if the jury find for plaintiff at all, yet we think the plaintiff's third prayer was not drawn with sufficient accuracy to properly submit the question of punitive damages to the jury.

For the reasons we have already assigned, the defendant's first, second, third and fourth prayers which seek to withdraw the case from the jury were properly refused.

We think the defendant's fifth and ninth prayers, which seek to separate the assault from the arrest, faulty, under the circumstances of this case, for the reason as we have already said that both the assault and the arrest constitute but one and the same transaction, occurring wholly on the premises and right of way of the defendant, within a very short space of time, and under the circumstances it would have been improper to instruct the jury to attempt, for the purpose of wholly exonerating the defendant, to distinguish between them.

. The defendant's sixth prayer is objectionable, because it leaves out of consideration the question whether the altercation resulting in the assault, did or did not arise out of the performance by McCarron of his duty as employee of the defendant.

If Strube was at the time unlawfully trespassing on the premises of the defendant, and for so doing he rendered himself liable to arrest by the special officer acting within the scope of his employment, the fact that he brought about his arrest by an altercation with the officer, and then provoked the assault by resisting arrest, would not wholly exonerate the defendant from the consequences of the use of excessive force and violence by McCarron upon him, though such provocation might be considered in mitigation of punitive damages.

Defendant's seventh prayer having been granted, is not before us for review.

Defendant's first and second special exceptions were properly overruled because there was evidence legally sufficient to warrant submitting the case to the jury.

But for error in granting plaintiff's prayer as to the measure of damages, the judgment must be reversed.

*Judgment reversed with costs, and a new trial awarded.*