# EDWARD V. STOCKHAM *vs.* MARION MALCOLM.

*Assault and Battery—Provocation—Mitigation of Damages— Inconsistent Rulings—Evidence—Impeaching Credibility of Witness—Evidence of Bias.*

In an action of assault and battery, the fact that the plaintiff used offensive language towards the defendant, and gave, as well as received, blows in the fight which ensued, may be considered by the jury in mitigation of damages.

But the use of abusive language by the plaintiff is not a legal justification for an assault upon him.

Evidence of the defendant's station in life and pecuniary resources is not admissible in an action of assault and battery if the plaintiff is only entitled to recover compensatory, and not punitive, damages.

The rulings are inconsistent in an action of assault and battery when the Court refuses to instruct the jury that the plaintiff is entitled to punitive damages, and then instructs them that they may take into consideration the defendant's condition in life and pecuniary circumstances in estimating

compensatory damages. But this error does not injure the defendant when the evidence of the plaintiff's witnesses is to the effect that the assault upon him was brutal, and such as entitled him to punitive damages.

A prayer offered by the defendant in an action of assault and battery asking the Court to instruct the jury that if they found that the plaintiff was the aggressor in the fight, and that defendant used no more force than was necessary for his protection, then they may return a verdict for the defendant, is properly rejected when the defendant had admitted, while testifying as a witness, that he had seized the plaintiff, sitting in a buggy, by the throat, and struck him as soon as he had alighted or been pulled from the buggy.

Where there was no evidence that the plaintiff had any brass knuckles in his hand, or that he made any movement as if to draw them out, or that he made any hostile demonstration of a kind to give defendant ground to suppose that he was in imminent danger, it was proper for the trial Court to refuse to allow the defendant to answer the question, "At that time, did you know anything about his using knuckles, carrying knuckles?"

When a witness has testified that he saw a certain person jump out of a buggy at a certain time and place, another witness, who at the time was standing alongside of the first, may be asked whether it was possible to have seen that person jump out of his buggy from the position in which he and the first witness were standing.

Evidence that a party to a cause prior to its trial made strong statements of his determination to win the suit, even at a cost far in excess of the sum involved, under circumstances showing his bias, is admissible to show the state of feeling and prejudice under which his testimony was given.

*Decided November 12th, 1909.*

Appeal from the Circuit Court for Howard County (BRASHEARS and FORSYTHE, JJ.), where there was a verdict for the plaintiff for $5,000 reduced under a remittitur to $3,000, on which judgment was entered.

The cause was argued before Boyd, C. J., Briscoe, Pearce, Schmucker, Burke and Thomas, JJ.

*S. A. Williams* and *John S. Young* (with whom was *J. G. Rogers* on the brief), for the appellant.

*D. G. McIntosh* and *J. J. Archer* (with whom was *J. Martin Burke* on the brief), for the appellee.

Schmucker, J., delivered the opinion of the Court.

The appellee, Marion Malcolm, sued the appellant, Edward V. Stockham, in the Circuit Court for Harford County for damages for an assault and battery. The case was first removed to Baltimore County upon the suggestion of the plaintiff and then to Howard County on the suggestion of the defendant. It was tried in the Circuit Court for the latter county on the general issue plea of not guilty, and the plaintiff recovered a judgment from which the defendant took the present appeal.

It appears from the record that the parties are distant relatives who have long resided in Harford County. They have known each other all of their lives but were not on friendly terms when the alleged assault occurred. At that time Malcolm was fifty-two years old and somewhat crippled in both hands and one leg as the result of a series of accidents. Stockham was a vigorous man forty-three years old and a graduate of West Point Military Academy where he had received instruction in the art of boxing as a part of his athletic training. He was well aware of Malcolm's physical condition.

The encounter between the parties which furnished the cause of action in the present suit occurred in May, 1908, on a public road or street in the town of Perryman. Malcolm was riding along the road in his buggy on his way to the railway station when he was halted by Stockham who was going on foot in the opposite direction. Stockham accused Malcolm of talking about him and a conversation ensued be-

tween them, which soon became heated and acrimonious, when the former reached into the buggy of the latter and laid violent hold of him whereupon he descended from the buggy to the road. When he reached the road he began to back away from Stockham who at once struck him a powerful blow in the face and quickly followed it with a succession of similar strokes. Malcolm retaliated as well as he could and an active struggle between the two men followed until they were separated by other persons.

Stockham came out of the affray uninjured except as to a lump on his head, which did not interfere with his taking a train and going to Baltimore, but Malcolm suffered severe injuries. Two of his front teeth were knocked out and his jaw bone was so splintered that small pieces of it continued to work their way to the surface, accompanied by suppuration, for several months. One of his eyes was severely if not permanently injured and his face was bruised and cut in a number of places. His mouth and palate were so inflamed that he could take only liquid nourishment for several weeks and he suffered much pain and inconvenience from his injuries.

As might be expected there is much conflict between the versions given, by the several parties, of their physical encounter and the conversation which led up to it. According to Malcolm's account he was sitting in his buggy with his legs crossed with the lines wrapped around his right hand when Stockham, after using violent language to him, forcibly seized him and dragged him down out of the buggy and immediately struck him a stunning blow in the face and continued to beat him brutally, striking him five or six times before he could free his hand from the lines and defend himself from further assault. Stockham on the other hand testified that it was only after he became incensed by the application to him of an opprobrious epithet by Malcolm that he caught hold of the latter who thereupon came voluntarily out of his buggy and assumed a threatening attitude and the two then proceeded to fight it out in the ordinary way and that in

the actual encounter Malcolm was as much the assailant as he was. He admitted, however, when on the stand, that he grabbed Malcolm by the shirt close up to the throat, while the latter was sitting in his buggy, and "gave his hand a twist" and that his object in so doing was "to defy him." Stockham further said, in describing how the fight began when Malcolm had gotten out of the buggy, "Well he was rather close to me when he came out and he stepped back a piece and I knew we were in for a fight and I struck him."

There is the testimony of other witnesses in the record some of which tends to corroborate Malcolm's story and other portions tend to corroborate the version of the affray given by Stockham.

At the close of the case in the Court below the plaintiff offered four prayers of which the Court rejected the second and fourth and granted the third, as offered, and granted the first in connection with the defendant's fifth. The defendant offered seven prayers of which the Court rejected the fourth and seventh and granted the first, second, third and sixth as offered and granted the fifth in connection with the plaintiff's first. Each party excepted to the action of the Court on the prayers.

The plaintiff's first prayer, in effect, instructed the jury that if they found that the defendant had pulled the plaintiff out of his wagon on the public road at Perrymans, on the occasion referred to in the evidence, and struck him, their verdict must be for the plaintiff, notwithstanding they might find that he had applied to the defendant the opprobrious epithet referred to, as the words constituting the epithet did not afford a legal justification for such conduct on the part of the defendant. The defendant's fifth prayer, in connection with which the foregoing prayer was granted, declared that the plaintiff must prove by a preponderance of evidence that the defendant made the assault and the plaintiff suffered the damage charged in the declaration.

There was no error in granting those prayers.

The Court having denied the plaintiff's right to recover

punitive or exemplary damages by rejecting his second pray-
er, granted his third prayer authorizing the jury to take into
consideration the defendant's condition in life and pecuniary
circumstances in estimating compensatory damages. The
rulings on those two prayers were inconsistent as the weight
of authority is that evidence of the defendant's station and
pecuniary condition is admissible only where punitive or ex-
emplary damages are in issue and not where the plaintiff is
limited to compensatory damages. 13 *Cyc.* 212; *Gaither* v.
*Blowers,* 11 Md. 536; *Sloan* v. *Edwards,* 61 Md. 100; *Byers*
v. *Horner,* 47 Md. 23; *Balto. & Ohio R. R.* v. *Barger,* 80
Md. 34.

We find, however, no ground of reversal in these incon-
sistent rulings because the error presented by them consists
in the denial of the plaintiff's right to punitive damages in
the event of a recovery in his favor, and not in authorizing the
jury to consider the defendant's condition and pecuniary cir-
cumstances. If the account given by the plaintiff's witnesses
of the assault be true it was a vicious and brutal one for which
he would have been entitled to punitive or exemplary dam-
ages. As the instruction in the fourth prayer, which was ex-
cepted to, was predicated upon the finding by the jury from
all of the evidence in the case that the assault was made as
described by the plaintiff's witnesses, it was in accordance
with the law governing the case, and therefore no injury was
done to the defendant by granting the prayer.

The defendant received the full benefit of the provocation
furnished by the plaintiff's alleged offensive language and
his participation in the fight which immediately followed the
assault, by the granting of the defendant's first and second
prayers which instructed the jury to consider those two facts,
if they found them to be such, in mitigation of damages. 3
*Cyc.* 1051; *B. & O. R. Co.* v. *Barger,* 80 Md. 32.

It is further to be observed that the evidence touching the
defendant's station in life and pecuniary circumstances was
admitted without objection or exception and there was no
motion to strike it out. We have repeatedly held that the

jury are entitled to consider evidence thus admitted in arriving at their verdict. *Pontier* v. *State,* 107 Md. 389; *Chesapeake Co.* v. *Goldberg,* 107 Md. 489; *Struth* v. *Decker,* 100 Md. 375; *Lamb* v. *Taylor,* 67 Md. 94; *Gibbs* v. *Gale,* 7 Md. 76.

In view of the admission by the defendant, when upon the stand, that he had seized the plaintiff, while sitting in his buggy, by the throat and struck him as soon as he had alighted or been pulled from the buggy, it would have been improper to have granted the defendant's fourth prayer. That prayer was constructed upon the theory that the plaintiff was the aggressor in the encounter between the parties. It was specially excepted to for want of evidence to support it. Even if we disregard the defendant's admission that he struck the first blow while the plaintiff was backing away from him, we fail to find in the record any legally sufficient evidence to support the theory that the plaintiff was the aggressor in the fight.

We find no error in the rejection of the defendant's seventh prayer as the instruction there asked for had already been given in effect by the granting of his first and second prayer.

The record contains four exceptions to rulings on evidence the first of which was not pressed at the hearing of the appeal and will not be further noticed by us than to say that there was no error in the ruling excepted to.

The second exception was taken to the Court's refusal to allow the defendant to answer the question "At that time did you know anything about his using knuckles, carrying knuckles." The obvious object of the question was to sustain the theory of justification of the assault by showing that the defendant had just reason to believe the plaintiff was about to assault him with a dangerous weapon, and therefore struck first. There is no evidence that the plaintiff had any knuckles in his hand, or that he made any movement as if to draw them from his person, or that he made any overt attack or hostile demonstration of a character to give the de-

fendant reasonable ground to suppose that he was in immi-
nent danger. The evidence was under these circumstances
properly excluded. In *Turpin* v. *State,* 55 Md. 275, we said
that the rule in such cases is correctly stated by Wharton in
his work on Evidence in criminal cases to be "that such evi-
dence is inadmissible unless proof be first given that there
was an overt act of attack and that the defendant at the time
of the collision was in apparent imminent danger." *Turpin's
Case* was one of homicide but the rule there stated was cited
and followed by us in a case of assault in *Jenkins* v. *State,*
80 Md. 75, and it is in principle applicable generally to
crimes of violence.

The third exception was taken to a question put to the
witness Frank B. Johnson who was standing alongside of a
previous witness, George Courtney, near the station at Perry-
man, at the time the latter professed to have seen the plain-
tiff jump out of his buggy and "as he supposed" assault the
defendant. The witness Johnson was asked whether it was
possible to have seen the plaintiff jump out of his buggy from
the position in which he and Courtney stood. The answer of
the witness to the question does not appear in the record, but
he answered a similar question afterwards by saying that his
vision at long range was very good and he could not tell
whether a man would jump or fall out of a wagon at that
distance with the obstructions that were there, and he did
not think anyone else could. The Court struck out the ex-
pression "I don't think any one else could." Assuming that
answer to have been given to the question excepted to we
find no error in the Court's ruling upon it. The answer
tended to aid the jury to test the accuracy of the witness
Courtney's evidence, as the conditions under which he and
Johnson saw the transaction were identical. Furthermore in
view of the defendant's own admission that he struck the
first blow the evidence was immaterial.

Nor do we find any error in the ruling which is brought
up for review by the fourth exception. The defendant was
asked, when on the stand in cross-examination, whether in a

conversation with Mr. B. S. Mitchell about three months after the fight he had not said that he had whipped Malcolm as a pugilist and would whip him in Court and spend $50,000 to do it, and he denied that he had ever said any thing of the kind. Mitchell was put upon the stand by the plaintiff in rebuttal and testified that the defendant had made the statement to him and gave the time and circumstances of its having been made. Both the question and answer were objected to but were admitted over the objection. The evidence was offered generally, and, although it may not have been admissible for the purpose of contradicting the defendant's evidence as it related to a collateral matter, we think it was admissible as tending to show his bias. He had offered his own testimony and it was competent for the plaintiff to show that he was a biased witness, and so strong a statement in reference to a purpose to win the suit if the jury believed that he made it, might have affected their opinion as to his credibility as a witness, a question upon which it was their duty to exercise their judgment. Every party to a suit is interested in its result and that fact ought to be and usually is taken into consideration by the jury in weighing the evidence of parties, but interest and bias are not the same. A party to a suit may be presumed to intend to testify truthfully despite his interest in its result, but when he in advance of its trial makes strong statements of his determination to win it even at a cost far in excess of the sum involved in it, the fact that he has made such a statement and the circumstances under which he made it should be permitted to be shown to the jury to inform them of the state of feeling and prejudice under which his testimony was given. *Byers* v. *Horner*, 47 Md. 32-33.

Finding no sufficient ground for reversal of the judgment appealed from we will affirm it.

*Judgment affirmed with costs.*