## BALTIMORE TRANSIT COMPANY v. JAMES F. FAULKNER

## SAME v. ALBERT G. FAULKNER

[Nos. 17 and 18, April Term, 1941.]

*Decided June 10th, 1941.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, COLLINS, and FORSYTHE, JJ.

*Eben J. D. Cross*, with whom was *Philip S. Ball*, for the appellant.

*Z. Townsend Parks, Jr.*, with whom was *Howard C. Bregel*, on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

James F. Faulkner and his son, Albert G. Faulkner, instituted these suits for damages against the Baltimore Transit Company for assault and battery alleged to have been committed upon them by employees of the company. The two cases were tried together, and the jury rendered a verdict in favor of the plaintiff in each case.

On April 16th, 1940, while Faulkner was driving with his son on Eutaw Street in Baltimore, his automobile was struck by another operated by Carl E. Micklich at the intersection of Lombard Street. No one was injured, and Micklich admitted that he was at fault. Faulkner, however, brought out his camera, and walked down the street to take a photograph. He then proceeded to take a picture from another angle. By that time a traffic jam had arisen, and employees of the Baltimore Transit Company from a nearby trouble station arrived on the scene. Faulkner warned the men not to move his car until he had finished taking his pictures. When Irving R. Goodard, one of the crew, took hold of the bumper to disengage the two cars, Faulkner hit him on the back

of the neck, whereupon Goddard struck Faulkner on the face "with his elbow or open hand," and another employee struck him in the eye. Faulkner's son, a college football athlete 21 years old, who had been trying to keep another man from releasing the brake, charged between them, and struck Edward C. Mooney, a member of the crew, on the arm. Mooney pushed him away, and when the son lunged toward him, Mooney struck him in the eye, knocking him over. The transit company's trouble truck radioed the police, and soon afterwards a police officer arrested the participants in the affray.

In the case of Albert G. Faulkner, the trial court instructed the jury that even though they found that he had first hit or pushed the defendant's employees, their verdict should be for him, if they further found that in repelling his acts they used "unreasonable and excessive force," meaning such force "as prudent men would not have used under all the circumstances of the case." A prayer of that nature is proper. *Zell v. Dunaway*, 115 Md. 1, 20 A. 215. But a similar instruction should also have been given in the case of the father.

The transit company offered a prayer in each case that if the jury found that the plaintiff had first assaulted and struck the employees while they were disengaging the automobiles, and the employees "did no more than defend themselves" from further assault, then the verdict should be for the defendant. These prayers were not drawn with sufficient accuracy to state the law of the cases, and were properly refused. It is undoubtedly true that the defendant company was entitled to have the matter of self-defense of its employees submitted to the jury. The law of self-defense justifies an act done in the reasonable belief of immediate danger. If an injury was done by a defendant in justifiable self-defense, he can neither be punished criminally nor held responsible for damages in a civil action. *New Orleans and Northeastern R. R. Co. v. Jopes*, 142 U. S. 18, 12 S. Ct. 109, 35 L. Ed. 919. But the prayers failed to state the standard of the amount of force which the employees could have used to

defend themselves. One who seeks to justify an assault on the ground that he acted in self-defense must show that he used no more force than the exigency reasonably demanded. The belief of a defendant in an action for assault that the plaintiff intended to do him bodily harm cannot support a plea of self-defense unless it was such a belief as a person of average prudence would entertain under similar circumstances. The jury should accordingly be instructed that to justify assault and battery in self-defense the circumstances must be such as would have induced a reasonable man of average prudence to make such an assault in order to protect himself. The question whether the belief of the defendant that he was about to be injured was a reasonable one under all the circumstances of the case is a question for the consideration of the jury. *Zell v. Dunaway,* 115 Md. 1, 20 A. 215.

The main question in these cases is whether the trial court properly instructed the jury as to damages. The jury were instructed in each case that if they found that the assault and battery committed by the employees of the transit company was "wanton and excessive," they could award, in addition to actual damages, such further vindictive and punitive damages as they might think proper from the evidence. The law is settled in Maryland that if an assault has been committed mailiciously or wantonly, the jury are not restricted to compensatory damages, but may give in addition thereto such exemplary damages as the circumstances of the case may warrant. *Sloan v. Edwards,* 61 Md. 28, 100. Thus, where a man had raised a window in a private home and assaulted the woman who resided there, this Court said that such an assault without provocation constituted "reckless violance" and "indignity," which justified the jury in awarding such exemplary damages as they might consider proper. *Thillman v. Neal,* 88 Md. 525, 42 A. 242. Where there is evidence of provocation by the plaintiff, but the provocation may not entirely justify an assault, yet if it is of such a character as would naturally arouse the anger of men of ordinary temperament, then

it is admissible in mitigation of exemplary damages, and whether there was sufficient provocation is a question that should be left to the consideration of the jury. *Baltimore & Ohio R. R. Co. v. Barger*, 80 Md. 23, 30 A. 560; *Baltimore & Ohio R. R. Co. v. Strube*, 111 Md. 119, 73 A. 697. Thus, where an employee, acting on the behalf that it·was his duty to his employer to remove the plaintiff's team of horses to clear the way for other customers, beat the plaintiff over the head with a monkey wrench a foot and a half long, broke his nose, and otherwise seriously injured him, this Court said that inasmuch as the assault was "wanton, high-hanged and outrageous," exemplary damages in the discretion of the jury were justified, although it was proper for the trial court to instruct the jury that the provaction could be considered in mitigation of damages. *Boyer v. Coxen*, 92 Md. 366, 48 A. 161. Likewise, in *Stockham v. Malcolm*, 111 Md. 615, 74 A. 569, where a graduate of the United States Military Academy, who had received instruction in boxing at West Point as a part of his athletic training, had assaulted an older man, splintered his jaw bone, injured the sight in one of his eyes, and knocked out two of his teeth, it was held that the viciousness and brutality of the assault warranted an instruction that the jury might inflict exemplary damages. In that case also it was held that offensive language or any other provocation should be considered by the jury in mitigation of damages.

The plaintiff in an action of assault is not entitled to recover exemplary damages merely because the assault was done with unnecessary violance. If no malice or wantonness has been shown, the jury should not be permitted to speculate that there was sufficient ground for awarding exemplary damages, when in reality there was no ground at all for such an award. *Smith v. Philadelphia, Wilmington & Baltimore R. R. Co.*, 87 Md. 48, 38 A. 1072. The word "wanton" means characterized by extreme recklessness and utter disregard for the rights of others. If there is no evidence of malice, the assault

must be characterized by "criminal indifference to civil obligations" in order to warrant punitive damages. *Philadelphia, Wilmington & Baltimore R. R. Co. v. Quigley*, 21 How. 202, 214, 16 L. Ed. 73, 77.

Even though the transit company failed to take a special exception to the granting of the damage prayers, and thus the Court of Appeals may not be able to consider the legal sufficiency of the evidence as to wantonness, nevertheless the prayers are improper. In *Baltimore & Ohio R. R. Co. v. Strube,* 111 Md. 119, 73 A. 697, where a prayer somewhat similar to the damage prayers in these cases was granted, this Court pointed out that there was some evidence in the case that the plaintiff had provoked the special officer of the defendant to arrest him and had started an altercation with the officer, and provoked the assault by resisting arrest, and therefore the prayer was not drawn with sufficient accuracy to submit the question of punitive damages properly to the jury.

According to the record in these cases, the employees of the transit company hurried to the scene to carry out their duty to their master to clear the tracks of the company. The keeping open of the public street is an imperative duty resting upon the municipality and upon the street railways to which it has granted franchises. It has been said that an obligation rests upon a street railway company to remove any obstruction from its tracks "as soon as may be, so that the rights of the travelnig public may not be interfered with." 25 *R. C. L., Street Railways,* sec. 101. Now, a person who undertakes to abate a nuisance, whether public or private, must use ordinary care to prevent the infliction of any unnecessary injury, but the Courts do not require exactly the same care which is ordinarily required of abaters, when "the nuisance produces imminent peril of the property of the abater, and he is compelled, in order to save his property, to act in emergency." *Ohio Valley Electric Ry. Co. v. Scott,* 172 Ky. 183, 189, S. W. 7, 9. For while the law leads sternly with that cruel disposition

which broods over hastily spoken words and seeks to make them an excuse for brutal behavior when the opportunity offers, it deals charitably with the infirmities of human nature which subject it to uncontrollable influences in a moment of great excitment. *Gaither v. Blowers,* 11 Md. 536, 552. Furthermore, under an ordinance of the City of Baltimore, it is a violation of the law for any person to use vehicles on the tracks of any street railway "to the hindrance and delay of the cars." Any person who wilfully refuses to vacate the car tracks, on request of any person in charge of a car passing on its route, is subject to a fine. *Baltimore City Code,* art. 39, sec. 36. Faulkner had taken two photographs, and wanted to continue to take more. He objected to the unlossening of the bumpers. Apparently Faulkner and his son were indifferent to the needs of the traveling public, when it is considered that the collision was not a serious one, and Micklich admitted any liability. The members of the trouble crew did not use any dangerous weapon. The police officer, who made the arrests, testified that the younger Faulkner's eye was bruised, but he did not observe any other injuries. The physician, whom the Faulkners consulted on the day following the affray, testified that the only injuries which the Faulkners sustained were a discolored eye and several abrasions. The law denies compensation to a person who through his own negligence has contributed to the injuries from which he suffers. A *fortiori,* exemplary damages, which are inflicted on the theory of punishment for the protection of the community, should not be awarded to those who have helped to excite public disorder. *Kiff v. Youmans,* 86, N. Y. 324, Am. Rep. 543, 547.

As the instructions authorizing the jury to inflict exemplary damages upon the transit company were erroneous, we reverse the judgments entered in these cases and award new trials.

*Judgments reversed, and new trials awarder,*
*with costs.*